UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH A. CARABILLO<br>1543 Beahm Town Road<br>P.O. Box 43<br>Oak Park, VA 22730<br><br>        Plaintiff,<br>v.<br><br>AMERICAN INTERNATIONAL<br>SPECIALTY LINES INSURANCE<br>COMPANY<br>c/o American International Surplus<br>Lines Agency, Inc.<br>70 Pine Street<br>New York, New York 10270<br><br>        Defendant. | Case No.: _____ |

SERVE:    Registered Agent
                Corporation Service Company
                1090 Vermont Avenue, N.W.
                Washington, D.C. 20005

## **COMPLAINT**

COMES NOW Joseph A. Carabillo ("Carabillo"), by counsel, and asserts a Complaint against American International Specialty Lines Insurance Company ("AISLIC").

PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Carabillo is a citizen of the State of Virginia.

2.      Defendant AISLIC is a corporation incorporated under the laws of State of Alaska, having its principal place of business in the State of New York, and doing business in the District of Columbia.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and the action is between citizens of different states.

4. Jurisdiction is also proper pursuant to 28 U.S.C. §§ 2201 and 2202 because this action seeks a declaratory judgment. The Court has jurisdiction over the ancillary common law bad faith claims because they arise out of the same set of operative facts as the substantive federal law claims.

5. Venue is proper in this judicial district, where the contract at issue was negotiated and where a substantial part of the events or omissions giving rise to the claim occurred.

## UNDERLYING FACTS

6. ULLICO, Inc. ("ULLICO") is a corporation formed under the laws of the State of Maryland and having its principal place of business in the District of Columbia.

7. Carabillo is a lawyer and was employed by ULLICO, serving as its Vice President and Chief Legal Officer from March 2, 1987 until June of 2003.

8. On July 18, 2003, Carabillo filed Civil Action No. 1:03CV01556 in the United States District Court of the District of Columbia, challenging the actions of ULLICO's Acting President and alleging that ULLICO, following a change of control and acting through new management, breached a contract with him, wrongfully terminated him, and deprived him of his statutory rights under the Employee Retirement Income Security Act. Ex. A.

9. ULLICO, along with four other parties joining it, asserted a counterclaim against Carabillo and others on October 17, 2003 (amended November 3, 2003), alleging that

Carabillo had engaged in "self-dealing . . . in violation of [] fiduciary and contractual duties to, [sic] ULLICO and its shareholders." Ex. B, ¶ 1, *et seq*. ("Counterclaim"). More specifically, the Counterclaim plaintiffs accuse Carabillo of breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, and unjust enrichment (Count I); professional negligence (Count II); acting *ultra vires* and in breach of fiduciary duties with respect to drafting, adopting and implementing an amendment to ULLICO's Qualified Pension Plan and Trust (Count VI); breach of fiduciary duty regarding personal receipts under ULLICO's Deferred Compensation Plan (Count VIII); and breach of fiduciary duty regarding receipts by Counterclaim Defendant Grelle under ULLICO's Deferred Compensation Plan (Count IX). See id.

10.     The alleged self-dealing by Carabillo is purported to have taken place "primarily during the period 1998-2001" (see Counterclaim ¶ 1, Ex. B), and several of the Counterclaimants' averments go back to 1997 and before (see id., throughout).

11.     By Answer filed December 16, 2003, Carabillo denied the allegations asserted against him. Ex. C.

12.     In a letter dated November 20, 2003, Carabillo, through his attorney, notified ULLICO's insurance broker, The McLaughlin Company ("McLaughlin"), that a complaint had been filed against Carabillo by ULLICO, *et al.*, in the form of a counterclaim and that Carabillo was seeking defense costs. Carabillo asked McLaughlin to submit his claim for coverage to all applicable insurance carriers "for the years 1996 to date" and to provide him with a complete listing of the coverage available during the relevant period along with copies of all applicable policies. Ex. D.

13. Having heard nothing in response to his claims for coverage, Carabillo, through his attorney, corresponded with McLaughlin again by letter dated December 9, 2003, seeking assurances of coverage in his capacity as a Counterclaim Defendant and requesting a timetable during which he would be advised of the insurers' responses to his demand. Ex. E.

14. By letter dated January 7, 2004, Carabillo, through his attorney, memorialized to McLaughlin his understanding that the brokerage firm had received and was processing his claims for coverage. Though by that date, McLaughlin had forwarded copies of several insurance policies to Carabillo, including AISLIC Policy No. 279-91-19, neither coverage nor consent to Carabillo's chosen representation had been confirmed or denied by any carrier. Ex. F.

15. Through his attorney, Carabillo reiterated to McLaughlin by letter dated January 14, 2004 the concerns he raised in his January 7, 2004 letter, stating that it was "crucial that [he] be informed" of the carriers' intentions. Ex. G.

16. McLaughlin subsequently forwarded copies of two additional policies to Carabillo, including AISLIC Policy No. 348-92-35.

17. Carabillo, through his attorney, has made numerous additional telephone calls to McLaughlin and other purported agents of the insurers identified in the insurance policies to which Carabillo was provided access.

18. Nearly three months after submitting notice to McLaughlin of the claims asserted against him, Carabillo received a letter, dated February 11, 2004, from AIG Technical Services ("AIG"). See Ex. H ("First Coverage Evaluation Letter"). In this letter, AIG, purporting to act on behalf of AISLIC, "evaluated" and disclaimed coverage for defense

and indemnity under AISLIC Errors and Omissions Policy No. 348-92-35 with respect to the allegations made by Carabillo against ULLICO in Civil Action No. 1:03CV01556.

19.  In its First Coverage Evaluation Letter, AIG addressed coverage for the claims Carabillo made *against ULLICO* (See Ex. H at ¶ 4), though Carabillo explicitly advised in the demand letter dated November 20, 2003 that he was "not [] seeking coverage for [his] action against [] ULLICO . . ." (Ex. D at ¶ 2).

20.  In its First Coverage Evaluation Letter, AIG failed to address ULLICO's Counterclaim against Carabillo (see Second Coverage Evaluation Letter, Ex. I, at ¶ 2), though Carabillo had explicitly advised in the letter dated November 20, 2003 that he was "seeking defense for the Counterclaims" (Ex. D at ¶ 2).

21.  In its First Coverage Evaluation Letter, AIG relied on the policy's definition of "Professional services" to wrongfully disclaim coverage because "[Carabillo's] claim [against ULLICO] [did] not allege any Wrongful Acts [by ULLICO] in connection with covered professional services." Ex. H at ¶ 10.

22.  In its First Coverage Evaluation Letter, AIG relied on the policy's ERISA claim exclusion to wrongfully disclaim coverage because "the crux of [Carabillo's] claim [against ULLICO] alleges wrongful termination and interference with an existing contractual relationship, brought under the ERISA statute. Ex. H at ¶ 12.

23.  Finally, in its First Coverage Evaluation Letter, AIG raised a potentially applicable exclusion (Exclusion (*l*)), which applies to "liability . . . assumed by the Insured under any contract or agreement." Ex. H at ¶ 13.

24.  Even *had* Carabillo been seeking coverage for his Complaint against ULLICO, it was fundamentally unreasonable and wrong of AIG to suggest that Carabillo assumed the

{S0306157.1}

5

liability of his *employer* in an employment contract or that an exclusion like Exclusion (*l*) typically works to exclude employment contract disputes.

25.     AIG sent Carabillo a second letter, dated February 25, 2004, regarding AISLIC Policy No. 348-92-35, purporting to "reevaluate" (but again disclaiming) coverage.  <u>See</u> Ex. I ("Second Coverage Evaluation Letter").

26.     In its Second Coverage Evaluation Letter, while AIG stated that it "[had] not made any determination as to the validity of [ULLICO's] allegations" and "[did] not wish to suggest that liability exist[ed]" (Ex. I at ¶ 4), AIG inappositely and wrongfully disclaimed coverage, stating that Carabillo did not meet the policy's definition of "Insured" in light of ULLICO's *allegation* that he had acted outside the scope of his duties (<u>id.</u> at ¶¶ 6 & 7).

27.     In its Second Coverage Evaluation Letter, AIG wrongfully disclaimed coverage based on its evaluation of the primary insuring agreement, as it had in its First Coverage Evaluation Letter.  <u>See</u> Ex. I.

28.     In its Second Coverage Evaluation Letter, AIG wrongfully, negligently, and unreasonably failed to consider ULLICO's plain allegations of misconduct by Carabillo *in his capacity "as a lawyer* licensed . . . to provide legal advice in accordance with [] prevailing standards of professional care applicable to lawyers employed as in-house chief legal counsel" (Counterclaim, Ex. B, at ¶ 97) (emphasis added) and wrongfully, negligently, and unreasonably failed to perceive the applicability of the Employed Lawyers Endorsement, providing professional liability insurance coverage to lawyers employed by ULLICO, the first named insured.  <u>See id.</u>& AISLIC Policy No. 348-92-35, Ex. J, at End. 6.

29.     Finally, near the end of its Second Coverage Evaluation Letter, AIG attempted to bolster its denial of coverage by including a catchall paragraph reciting in an arbitrary

fashion "certain policy exclusions" that "*could* [be] implicate[d]" by the allegations in the Counterclaim.  See Ex. I at ¶ 12.

30. In its catchall paragraph, AIG raised two exclusions (Exclusion (a) and Exclusion (b)) applying "to any criminal act" and "to any dishonest or fraudulent act or omission," and stated that "if [Carabillo's] actions . . . were criminal or fraudulent, the above-referenced exclusions are applicable." Ex. I at ¶ 12.

31. In its catchall paragraph, AIG wrongfully failed to recognize or acknowledge that Exclusion (a) was amended by Policy Endorsement 2 to apply to claims "arising out of or alleging any criminal, malicious, dishonest, or fraudulent act, error or omission of any Insured . . ." and that through said endorsement, the [insurer] "*shall defend* any action brought against the Insured alleging such Wrongful Act . . ." (said monies to be reimbursed should the allegations be "subsequently proven by a final adjudication unfavorable to the Insured"). Ex. J at End. 2 (emphasis added).

32. Additionally, in its catchall paragraph, AIG wrongfully denied coverage based on Exclusion (f), applying to claims brought by one Insured against another, stating that because the Named Insured, ULLICO, filed suit against Carabillo, "a purported Insured . . . , coverage is barred," even though the Counterclaim against Carabillo was brought by four other counterclaim plaintiffs in addition to ULLICO, which is clear on the face of the Counterclaim. Ex. I at ¶ 12.

33. Moreover, AIG cited an exclusion that was modified, if not deleted, by Policy Endorsement 6 (the provision under which the coverage sought ought to have been evaluated), which endorsement recites its own "insured versus insured" exclusion (see Ex. J

at End. 6, pp. 2 & 3) that either takes the place of primary Exclusion (f) or exists alongside primary Exclusion (f) in disharmony, rendering the exclusion ambiguous.

34.  The "insured versus insured exclusion" set forth in Policy Endorsement 6 is ambiguous in and of itself, even if it is not disharmonious with primary Exclusion (f)..

35.  Even if the "insured versus insured" set forth in Policy Endorsement 6 is *un*ambiguous, the exclusion does not preclude coverage under the facts of this case.

36.  Carabillo still has not received copies of all AISLIC policies for the years 1996 to date and is not certain he has complete copies of the two AISLIC policies that were provided.

## CLAIMS FOR RELIEF

### COUNT I–DECLARATORY JUDGMENT
**AISLIC Policy No. 348-92-35**

37.  AIG is an agent of AISLIC and, at all times herein mentioned, was acting within the purpose and scope of said agency.

38.  ULLICO, Carabillo's former employer, is the first named insured on AISLIC Policy No. 348-92-35, the effective dates of which are October 30, 2003 to October 30, 2004. Ex. J, Declarations.

39.  The "coverage analyses" rendered by AIG improperly refer to deleted and amended policy provisions and fail to take any account of the Employed Lawyer's Endorsement attached to AISLIC Policy No. 348-92-35 as Endorsement No. 6.

40.  AISLIC Policy No. 348-92-35, Endorsement No. 6, amends the policy definition of "Insured" to include "any person admitted to practice law who is, was, or

becomes employed as a lawyer full time and salaried by the Named Insured, (herein referred to as an 'Employed Lawyer')." Ex. J at End. 6, ¶ 2.

41.     Carabillo was an Employed Lawyer of ULLICO and therefore qualifies as an "Insured" under AISLIC Policy No. 348-92-35.

42.     In Endorsement No. 6 to AISLIC Policy No. 348-92-35, AISLIC agreed "to pay on behalf of the Employed Lawyer all sums which the Employed Lawyer shall become legally obligated to pay as damages because of any claim, including claims for Personal Injury, first made against the Employed Lawyer and reported in writing to the Company during the Policy Period, arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyers, except for such damages which the Named Insured shall indemnify such Employed Lawyer." Ex. J at End. 6, ¶ 1 at 1(a).

43.     In Endorsement No. 6 to AISLIC Policy No. 348-92-35, AISLIC agreed "to pay on behalf of the Named Insured all sums which the Named Insured may be required or permitted by law to indemnify an Employed Lawyer for any sum which the Employed Lawyer becomes legally obligated to pay as Defense Costs, Charges and Expenses or damages because of any claim, including claims for Personal Injury, first made against the Employed Lawyer and reported in writing to the Company during the Policy Period arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyer while acting in the course of the said Employed Lawyer's employment by the Named Insured." Ex. J at End. 6, ¶ 1 at 1(b).

44. Under Endorsement No. 6 to AISLIC Policy No. 348-92-35, "Wrongful Act" is defined as "any negligent act, error or omission, or any offense contained in the definition of Personal Injury." Ex. J at End. 6, ¶ 3 at 7.

45. The allegations asserted against Carabillo in Count I of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Policy No. 348-92-35.

46. The allegations asserted against Carabillo in Count II of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Policy No. 348-92-35.

47. The allegations asserted against Carabillo in Count VI of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Policy No. 348-92-35.

48. The allegations asserted against Carabillo in Count VIII of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Policy No. 348-92-35.

49. The allegations asserted against Carabillo in Count IX of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Policy No. 348-92-35.

50. Each and every allegation asserted against Carabillo in the Counterclaim qualifies as an alleged "Wrongful Act" under AISLIC Policy No. 348-92-35.

51. The Employed Lawyers' Endorsement to AISLIC Policy No. 348-92-35 confers coverage on Carabillo (for whom, among other employed lawyers, ULLICO

specifically purchased professional liability insurance coverage) for each count asserted in the Counterclaim.

52.     AISLIC received notice of an occurrence which might reasonably have been expected to give rise to a claim against Carabillo for an alleged Wrongful Act occurring during or prior to the Policy Period and was advised of the nature of the occurrence and specifics of the possible Wrongful Act as required by AISLIC Policy No. 348-92-35.

53.     AISLIC received proper notice of ULLICO's Counterclaim against Carabillo as required by AISLIC Policy No. 348-92-35.

54.     AISLIC owes Carabillo a defense under AISLIC Policy No. 348-92-35 for the Counterclaim asserted against him by ULLICO, *et al*.

55.     AISLIC owes Carabillo indemnity under AISLIC Policy No. 348-92-35 for the Counterclaim asserted against him by ULLICO, *et al*.

**AISLIC Policy No. 279-91-19**

56.     ULLICO is the first named insured on AISLIC Policy No. 279-91-19, the effective dates of which are October 30, 2002 to October 30, 2003. Ex. K, Declarations.

57.     AISLIC Policy No. 279-91-19, Endorsement No. 6, amends the policy definition of "Insured" to include "any person admitted to practice law who is, was, or becomes employed as a lawyer full time and salaried by the Named Insured, (herein referred to as an 'Employed Lawyer')." Ex. K at End. 6, ¶ 2.

58.     Carabillo was an Employed Lawyer of ULLICO and therefore qualifies as an "Insured" under AISLIC Policy No. 279-91-19.

59. In Endorsement No. 6 to AISLIC Policy No. 279-91-19, AISLIC agreed "to pay on behalf of the Employed Lawyer all sums which the Employed Lawyer shall become legally obligated to pay as damages because of any claim, including claims for Personal Injury, first made against the Employed Lawyer and reported in writing to the Company during the Policy Period, arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyers, except for such damages which the Named Insured shall indemnify such Employed Lawyer." Ex. K at End. 6, ¶ 1 at 1(a).

60. In Endorsement No. 6 to AISLIC Policy No. 279-91-19, AISLIC agreed "to pay on behalf of the Named Insured all sums which the Named Insured may be required or permitted by law to indemnify an Employed Lawyer for any sum which the Employed Lawyer becomes legally obligated to pay as Defense Costs, Charges and Expenses or damages because of any claim, including claims for Personal Injury, first made against the Employed Lawyer and reported in writing to the Company during the Policy Period arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyer while acting in the course of the said Employed Lawyer's employment by the Named Insured." Ex. K at End. 6, ¶ 1 at 1(b).

61. Under Endorsement No. 6 to AISLIC Policy No. 279-91-19, "Wrongful Act" is defined as "any negligent act, error or omission, or any offense contained in the definition of Personal Injury." Ex. K at End. 6, ¶ 3 at 7.

62. The allegations asserted against Carabillo in Count I of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Policy No. 279-91-19.

63. The allegations asserted against Carabillo in Count II of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Policy No. 279-91-19.

64. The allegations asserted against Carabillo in Count VI of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Policy No. 279-91-19.

65. The allegations asserted against Carabillo in Count VIII of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Policy No. 279-91-19.

66. The allegations asserted against Carabillo in Count IX of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Policy No. 279-91-19.

67. Each and every allegation asserted against Carabillo in the Counterclaim qualifies as an alleged "Wrongful Act" under AISLIC Policy No. 279-91-19.

68. The Employed Lawyers' Endorsement to AISLIC Policy No. 279-91-19 confers coverage on Carabillo (for whom, among other employed lawyers, ULLICO specifically purchased professional liability insurance coverage) for each count asserted in the Counterclaim.

69. AISLIC received notice of an occurrence which might reasonably have been expected to give rise to a claim against Carabillo for an alleged Wrongful Act occurring during or prior to the Policy Period and was advised of the nature of the occurrence and specifics of the possible Wrongful Act as required by AISLIC Policy No. 279-91-19.

70. AISLIC received proper notice of ULLICO's Counterclaim against Carabillo as required by AISLIC Policy No. 279-91-19.

71. AISLIC owes Carabillo a defense under AISLIC Policy No. 279-91-19 for the Counterclaim asserted against him by ULLICO, *et al*.

72. AISLIC owes Carabillo indemnity under AISLIC Policy No. 279-91-19 for the Counterclaim asserted against him by ULLICO, *et al*.

### Other AISLIC Policies

73. Carabillo may qualify as an "Insured" under other applicable AISLIC policies, copies of which he has requested but has not received.

74. Carabillo may be entitled to a defense and indemnity from AISLIC for the Counterclaim asserted against him by ULLICO, *et al*., under other AISLIC policies, copies of which he has requested but has not received.

### COUNT II-BAD FAITH

75. AISLIC's denial of coverage under Policy No. 348-92-35, through its agent, AIG, is in gross derogation of an insurer's obligation to make a good faith evaluation of its duty to defend based on the allegations in the Counterclaim and whether such allegations are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.

76. AISLIC's utter and complete failure to respond to Carabillo's November 20, 2003 request for coverage under AISLIC Policy No. 279-91-19 and other potentially applicable AISLIC policies is in gross derogation of an insurer's obligation to make a good faith evaluation of its duty to defend and indemnify based on the allegations in the

Counterclaim and whether such allegations are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.

77. AISLIC's failure to provide copies of all potentially applicable policies for the years 1996 to date is in gross derogation of an insurer's obligations to its insured.

78. As a direct result of AISLIC's bad faith failure to respond timely and appropriately to his claims for insurance coverage, Carabillo has been wrongfully deprived of defense and indemnification, and as a result, has suffered annoyance, aggravation, and inconvenience.

79. AISLIC's failure and refusal to honor its obligations to Carabillo constitutes extreme and outrageous behavior.

80. With its facially deficient coverage evaluation as to AISLIC Policy No. 348-92-35 and its categorical failure to respond in more than five months to Carabillo's claim for coverage under AISLIC Policy No. 279-91-19 or any other AISLIC policy that might confer coverage under the circumstances, AISLIC has intentionally or recklessly caused Carabillo severe emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Joseph A. Carabillo prays that the Court grant him the following relief:

    a.    a declaration establishing AISLIC's duty to defend and indemnify him;

    b.    an order that AISLIC reimburse him for costs previously expended in defense of the litigation brought by ULLICO, *et al.*;

c. an order that AISLIC reimburse him for the fees and costs associated with bringing the instant declaratory judgment action to force AISLIC to honor their undertakings;

d. damages for aggravation and inconvenience;

e. punitive damages;

f. pre- and post-judgment interest; and

g. any such other relief as this Court deems appropriate under these facts.

Respectfully submitted,

_____
Daniel G. Grove, Esquire (DC Bar #066399)
Jackson Kelly, PLLC
2401 Pennsylvania Avenue, N.W.
Suite 400
Washington, D.C. 20037
Telephone: (202) 973-0200
Fax: (202) 973-0247
*Counsel for Plaintiff Joseph A. Carabillo*