## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSEPH A. CARABILLO,                          :

                **Plaintiff,**              :

**v.**                                        :
                                :

AMERICAN INTERNATIONAL             :
SPECIALTY LINES INSURANCE          :
COMPANY                            :

**and**                            :          Case No. 1:04CV00970 (RWR)
                                   :
NATIONAL UNION FIRE INSURANCE      :
COMPANY OF PITTSBURGH, PA.         :
**AIG Global Investment Group**    :
**70 Pine Street**                 :
**15th Floor**                     :
**New York, New York 10270**       :
                                   :
                **Defendants.**         :

**SERVE:**    **Registered Agent:**
           **Corporation Service Center**
           **1090 Vermont Avenue, N.W.**
           **Washington, D.C. 20005**

           **and**

           **Department of Insurance**
           **Securities and Banking**
           **810 First Street, N.E.**
           **Suite 701**
           **Washington, D.C. 20002**

## AMENDED COMPLAINT

COMES NOW Joseph A. Carabillo ("Carabillo"), by counsel, and asserts a Complaint against American International Specialty Lines Insurance Company ("AISLIC"), and National Union Fire Insurance Company of Pittsburgh, PA ("National Union").

{S030811L.1}

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Carabillo is a citizen of the State of Virginia.

2. Defendant AISLIC is a corporation incorporated under the laws of the State of Alaska, having its principal place of business in the State of New York, and doing business in the District of Columbia.

3. Defendant National Union is a corporation incorporated under the laws of the State of Pennsylvania, having its principal place of business in the State of New York, and doing business in the District of Columbia.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and the action is between citizens of different states.

5. Jurisdiction is also proper pursuant to 28 U.S.C. §§ 2201 and 2202 because this action seeks a declaratory judgment. The Court has jurisdiction over the ancillary common law claims because they arise out of the same set of operative facts as the substantive federal law claims.

6. Venue is proper in this judicial district, where the contracts at issue were negotiated and where a substantial part of the events or omissions giving rise to the claims occurred.

## UNDERLYING FACTS

7. ULLICO Inc. ("ULLICO") is a corporation formed under the laws of the State of Maryland and having its principal place of business in the District of Columbia.

8. Carabillo is a lawyer and was employed by ULLICO, serving as its Vice President and Chief Legal Officer from March 2, 1987 until June of 2003.

9.     On July 18, 2003, Carabillo filed Civil Action No. 1:03CV01556 in the United States District Court of the District of Columbia, challenging the actions of ULLICO's Acting President and alleging that ULLICO, following a change of control and acting through new management, breached a contract with him, wrongfully terminated him, and deprived him of his statutory rights under the Employee Retirement Income Security Act ("ERISA"). Ex. A.

10.    ULLICO, along with four other parties joining it ("Counterclaim Plaintiffs"), asserted a counterclaim against Carabillo and others on October 17, 2003 (amended November 3, 2003), alleging that Carabillo had engaged in "self-dealing . . . in violation of [] fiduciary and contractual duties to, [sic] ULLICO and its shareholders." Ex. B, ¶ 1, *et seq.* ("Counterclaim").[1]  More specifically, the Counterclaim Plaintiffs accuse Carabillo of breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, and unjust enrichment (Count I); professional negligence (Count II); acting *ultra vires* and in breach of fiduciary duties with respect to drafting, adopting and implementing an amendment to ULLICO's Qualified Pension Plan and Trust (Count VI); breach of fiduciary duty regarding personal receipts under ULLICO's Deferred Compensation Plan (Count VIII); and breach of fiduciary duty regarding receipts by Counterclaim Defendant Grelle under ULLICO's Deferred Compensation Plan (Count IX). *See id.*

---

[1] Ullico filed a second Counterclaim, Counterclaim II, against Carabillo, among others, on July 28, 2004.  This Amended Complaint applies only to the original Counterclaim against Carabillo.

11.    The alleged self-dealing by Carabillo is purported to have taken place "primarily during the period 1998-2001" (see Counterclaim ¶ 1, Ex. B), and several of the Counterclaimants' averments go back to 1997 and before (see id., throughout).

12.    By Answer filed December 16, 2003, Carabillo denied the allegations asserted against him. Ex. C.

13.    In 2002, the United States Department of Labor ("DOL") issued ULLICO two subpoenas, one related to questions concerning certain investment transactions and the other to questions concerning ERISA covered plans. In June 2002, the DOL issued a subpoena related to determining whether any person violated any provision of Title I of ERISA. The DOL's questioning of ULLICO resulted in no findings of wrongdoing.

14.    In a letter dated October 30, 2002, Ross, Dixon, & Bell, LLP notified National Union of the DOL subpoena *duces tecum*, providing notice of a potential claim under National Union's Directors, Officers, and Private Company Liability Policies ("Directors and Officers"). Ex. D.

15.    In a letter dated November 20, 2003, Carabillo, through his attorney, notified ULLICO's insurance broker, The McLaughlin Company ("McLaughlin"), that a complaint had been filed against Carabillo by the new management and new board of directors at ULLICO and others not party to Carabillo's original claim, in the form of a counterclaim and that Carabillo was seeking defense costs. Carabillo asked McLaughlin to submit his claim for coverage to all applicable insurance carriers "for the years 1996 to date" and to provide him with a complete listing of the coverage available during the relevant period along with copies of all applicable policies. Ex. E.

16.   Having heard nothing in response to his claims for coverage, Carabillo, through his attorney, corresponded with McLaughlin again by letter dated December 9, 2003, seeking assurances of coverage in his capacity as a Counterclaim Defendant and requesting a timetable during which he would be advised of the insurers' responses to his demand. Ex. F.

17.   By letter dated January 7, 2004, Carabillo, through his attorney, memorialized to McLaughlin his understanding that the brokerage firm had received and was processing his claims for coverage. Though by that date, McLaughlin had forwarded copies of several insurance policies to Carabillo, including AISLIC Insurance Company's Professional Liability Insurance ("Professional Liability") Policy No. 279-91-19 and National Union Directors and Officers Policy No. 495-36-84, neither coverage nor consent to Carabillo's chosen representation had been confirmed or denied by any carrier. Ex. G.

18.   Through his attorney, Carabillo reiterated to McLaughlin by letter dated January 14, 2004 the concerns he raised in his January 7, 2004 letter, stating that it was "crucial that [he] be informed" of the carriers' intentions. Ex. H.

19.   McLaughlin subsequently forwarded copies of two additional policies to Carabillo, including AISLIC Professional Liability Insurance Policy No. 348-92-35 and National Union Directors and Officers Policy No. 299-96-17.

20.   Carabillo, through his attorney, has made numerous additional telephone calls to McLaughlin and other purported agents of the insurers identified in the insurance policies to which Carabillo was provided access.

21.     On or about March 29, 2005, the United States District Court for the District of Columbia ruled that it would only preside over the ERISA based claims including Counts VI, VIII, and IX as they relate to Carabillo. Ex. I. The Court dismissed all other causes of action without prejudice for lack of subject matter jurisdiction.

22.     When Counterclaim Plaintiffs asserted the Counterclaim in Federal Court, they simultaneously filed an action in the Superior Court of the District of Columbia. The Superior Court action stayed its proceedings pending the District Court's determination of jurisdiction. Counterclaim Plaintiffs have moved to lift the stay in an effort to continue with the claims asserted in Counts I, II, V, XII and XIII in the Superior Court of the District of Columbia. Ex. J.

### Errors and Omissions Policy

23.     Nearly three months after submitting notice to McLaughlin of the claims asserted against him, Carabillo received a letter, dated February 11, 2004, from AIG Technical Services ("AIG"). *See* Ex. K ("First Coverage Evaluation Letter"). In this letter, AIG, purporting to act on behalf of AISLIC, "evaluated" and disclaimed coverage for defense and indemnity under AISLIC Errors and Omissions Policy No. 348-92-35 with respect to the allegations made by Carabillo against ULLICO in Civil Action No. 1:03CV01556.

24.     In its First Coverage Evaluation Letter, AIG addressed coverage for the claims Carabillo made *against ULLICO* (See Ex. K at ¶ 4), though Carabillo explicitly advised in the demand letter dated November 20, 2003 that he was "not [] seeking coverage for [his] action against [] ULLICO . . ." Ex. E at ¶ 2.

25.    In its First Coverage Evaluation Letter, AIG failed to address ULLICO's Counterclaim against Carabillo (*See* Second Coverage Evaluation Letter, Ex. K, at ¶ 2), though Carabillo had explicitly advised in the letter dated November 20, 2003 that he was "seeking defense for the Counterclaims" Ex. E at ¶ 2.

26.    In its First Coverage Evaluation Letter, AIG relied on the policy's definition of "Professional services" to wrongfully disclaim coverage because "[Carabillo's] claim [against ULLICO] [did] not allege any Wrongful Acts [by ULLICO] in connection with covered professional services." Ex. K at ¶ 10.

27.    In its First Coverage Evaluation Letter, AIG relied on the policy's ERISA claim exclusion to wrongfully disclaim coverage because "the crux of [Carabillo's] claim [against ULLICO] alleges wrongful termination and interference with an existing contractual relationship, brought under the ERISA statute. Ex. K at ¶ 12.

28.    Finally, in its First Coverage Evaluation Letter, AIG raised a potentially applicable exclusion (Exclusion (l), which applies to "liability . . . assumed by the Insured under any contract or agreement." Ex. K at ¶ 13.

29.    Even *had* Carabillo been seeking coverage for his Complaint against ULLICO, it was fundamentally unreasonable and wrong of AIG to suggest that Carabillo assumed the liability of his *employer* in an employment contract or that an exclusion like Exclusion (l) typically works to exclude employment contract disputes.

30.    AIG sent Carabillo a second letter, dated February 25, 2004, regarding AISLIC Professional Liability Insurance Policy No. 348-92-35, purporting to "reevaluate" (but again disclaiming) coverage. See Ex. L ("Second Coverage Evaluation Letter").

31.    In its Second Coverage Evaluation Letter, while AIG stated that it "[had] not made any determination as to the validity of [ULLICO's] allegations" and "[did] not wish to suggest that liability exist[ed]" (Ex. L at ¶ 4), AIG inappositely and wrongfully disclaimed coverage, stating that Carabillo did not meet the policy's definition of "Insured" in light of ULLICO's *allegation* that he had acted outside the scope of his duties (*id.* at ¶¶ 6 & 7).

32.    In its Second Coverage Evaluation Letter, AIG wrongfully disclaimed coverage based on its evaluation of the primary insuring agreement, as it had in its First Coverage Evaluation Letter. See Ex. L.

33.    In its Second Coverage Evaluation Letter, AIG wrongfully, negligently, and unreasonably failed to consider ULLICO's plain allegations of misconduct by Carabillo *in his capacity as a lawyer* licensed . . . to provide legal advice in accordance with [] prevailing standards of professional care applicable to lawyers employed as in-house chief legal counsel" (Counterclaim, Ex. B, at ¶ 97) (emphasis added) and wrongfully, negligently, and unreasonably failed to perceive the applicability of the Employed Lawyers Endorsement, providing professional liability insurance coverage to lawyers employed by ULLICO, the first named insured. *See id.* and AISLIC Professional Liability Insurance Policy No. 348-92-35, Ex. M at End. 6.

34.    Finally, near the end of its Second Coverage Evaluation Letter, AIG made an improper attempt to bolster its denial of coverage by including a catchall paragraph reciting in an arbitrary fashion "certain policy exclusions" that "*could* [be] implicate[d]" by the allegations in the Counterclaim providing no specific basis for denial under the

vaguely referenced policy exclusions. *See* Ex. L at ¶ 12. A coverage evaluation must contain specific reasons for denials citing to specific policy clauses. An insurance company cannot speculate as to its reasons for denial.

35. In its catchall paragraph, AIG raised two exclusions (Exclusion (a) and Exclusion (b)) applying "to any criminal act" and "to any dishonest or fraudulent act or omission," and stated that "if [Carabillo's] actions . . . were criminal or fraudulent, the above-referenced exclusions are applicable." Ex. L at ¶ 12.

36. In its catchall paragraph, AIG wrongfully failed to recognize or acknowledge that Exclusion (a) was amended by Policy Endorsement 2 to apply to claims "arising out of or alleging any criminal, malicious, dishonest, or fraudulent act, error or omission of any Insured . . ." and that through said endorsement, the [insurer] "*shall defend* any action brought against the Insured alleging such Wrongful Act . . ." (said monies to be reimbursed should the allegations be "subsequently proven by a final adjudication unfavorable to the Insured"). AIG completely ignores the fact that no fraud, criminal acts, nor dishonesty claims were ever alleged against Mr. Carabillo. Because there were no such allegations, Exclusion (a) does not apply. Ex. M at End. 2 (emphasis added).

37. Additionally, in its catchall paragraph, AIG wrongfully denied coverage based on Exclusion (f), applying to claims brought by one Insured against another, stating that because the Named Insured, ULLICO, filed suit against Carabillo, "a purported Insured . . . , coverage is barred," even though the Counterclaim against Carabillo was

brought by four other counterclaim plaintiffs in addition to ULLICO, which is clear on the face of the Counterclaim. Ex. L at ¶ 12.

38.    Moreover, AIG cited an exclusion that was modified, if not deleted, by Policy Endorsement 6 (the provision which provides coverage for lawyers at ULLICO), which endorsement recites its own "insured versus insured" exclusion (See Ex. M at End. 6, pp. 2 & 3) that either takes the place of primary Exclusion (f) or exists alongside primary Exclusion (f) in disharmony, rendering the exclusion ambiguous.

39.    The "insured versus insured exclusion" set forth in Policy Endorsement 6 is ambiguous in and of itself, even if it is not disharmonious with primary Exclusion (f).

40.    Even if the "insured versus insured" set forth in Policy Endorsement 6 is *un*ambiguous, the exclusion does not preclude coverage under the facts of this case.

41.    In its Answer to Carabillo's Original Complaint against AISLIC, AILSIC raised for the first time the issue of improper notice.

42.    Carabillo provided proper notice to AISLIC under all applicable policies through McLaughlin in 2003, and in 2002, provided notice of a claim to AIG, which acts on behalf of AISLIC and National Union, through Ross, Dixon & Bell.

43.    Carabillo still has not received copies of all AISLIC policies for the years 1996 to date and cannot be certain he has complete copies of the two AISLIC policies that were provided.

**Directors, Officers and Private Company Liability Policy**

44.    Nearly five months after submitting notice to McLaughlin of the claims asserted against him, Carabillo received a letter, dated April 9, 2004, from AIG. *See* Ex. O.  In this letter, AIG, purporting to act on behalf of National Union, "evaluated" and disclaimed coverage for defense and indemnity under National Union's Directors, Officers and Private Company Liability Insurance Policy No. 299-96-17 and Run-Off Endorsement to Policy No. 495-36-84 with respect to the allegations made against Carabillo in Civil Action No. 1:03CV01556. *See* Policies No. 299-96-17 and 495-36-84 attached as Ex. P and Q, respectively.

45.    In this letter, AIG wrongfully disclaimed coverage based on policy Exclusion 4(i) excluding coverage for "Claims made against an Insured by any Insured" stating that there "would be no coverage for Carabillo for the Counterclaim brought against him by the Company" even though the Counterclaim against Carabillo was also brought by four other Counterclaim Plaintiffs in addition to ULLICO. Ex. O at ¶ 10.

46.    The insured versus insured exclusion set forth in Exclusion 4(i) is ambiguous in and of itself.

47.    Even if the insured versus insured exclusion is unambiguous, the exclusion does not preclude coverage under the facts of this case.

48.    In this letter, AIG also relied on the policy's Prior Acts Exclusion, at Endorsement 16, to wrongfully disclaim coverage because "the alleged Wrongful Acts occurred prior to July 19, 2003 and the provision excludes coverage for "Wrongful Acts

which occur prior to the inception date of the Policy Period." Ex. O at ¶ 11. However, the documents and policies provided to Carabillo do not include an Endorsement 16.

49.    In this letter, AIG does not disclaim coverage under the policy terms but relies on misplaced interpretations of two exclusions to the policy, neither of which applies to coverage for Carabillo against the Counterclaim asserted.

50.    In the same letter, attached as Exhibit O, AIG, purporting to act on behalf of National Union wrongfully disclaimed coverage under the Run Off Endorsement to Policy No. 495-36-84 based on the insured versus insured exclusion.

51.    Carabillo still has not received copies of all National Union policies to date and is not certain he has complete copies of the National Union policies that were provided. In fact, Endorsement 16 to Directors and Officers Policy No. 299-96-17 was never provided.

### Employee Benefit Plan Fiduciary Liability Insurance

52.    Carabillo received a letter, dated October 29, 2004, from AIG. *See* Ex. R ("First Coverage Evaluation Letter"). In this letter, AIG, purporting to act on behalf of National Union, "evaluated" and partially disclaimed coverage for defense and indemnity under National Union Employee Benefit Plan Fiduciary Liability Insurance ("Employee Benefit") Policies No. 874-44-03 and 548-03-72 with respect to the allegations made against Carabillo in Civil Action No. 1:03CV01556. *See* Policies No. 874-44-03 and 548-03-72 attached as Ex. S and T, respectively.

53.     In the First Coverage Evaluation letter, AIG stated there is no coverage under Employee Benefit Policy No. 548-03-72 pursuant to Endorsement 12 of said Policy which provides that the "Insurer shall not be liable for any Loss in connection with… Events" arising out of two Department of Labor ("DOL") subpoenas issued to ULLICO on April 11, 2002 and June 11, 2002. Ex. R at p. 3. The first subpoena was related to questions concerning ERISA covered plans that are eligible to purchase ULLICO Inc. stock and the second was related to determining whether any person violated ERISA. Ex. T at End. 12. AIG disclaims coverage for Carabillo under this policy stating that the Counterclaims involve the defense of a claim arising out of or related to said DOL subpoenas. *See* Ex. R at p. 4.

54.     In the First Coverage Evaluation Letter, AIG raised the fact that the Notice/Claim provision of National Union Employee Benefit Policy 874-44-03 (effective October 30, 2001 - October 30, 2002) brings the Counterclaim within the period of this Policy. AIG stated that the Counterclaim was considered to have been made when the DOL investigation matter was reported and will therefore be handled under Employee Benefit Policy No. 874-44-03. *See* Ex. R at p. 4.

55.     Although National Union determines coverage under Employee Benefit Policy No. 874-44-03, National Union wrongfully denies coverage under the two subsequent Employee Benefit Policies, the October 30, 2002 to October 30, 2003 policy and October 30, 2003 to October 30, 2004 policy  (Policy No. 548-03-72). The two subsequent policy periods were also applicable to Carabillo's claims as several claims

against Carabillo arose subsequent to the DOL investigations. Carabillo was not aware at the time of the DOL investigation that subsequent litigation would arise. Subsequent claims brought about in litigation in 2003 invoked the applicability of other policy periods.

56.     In the First Coverage Letter, under Employee Benefit Policy No. 874-44-03 (deemed the effective policy), AIG wrongfully denies coverage of several Counts of the Counterclaim including Counts I and II pertaining to Carabillo based on the policy's definition of "Wrongful Act" which is defined in part as a "violation of any of the responsibilities, obligations or duties imposed upon Fiduciaries by Employee Benefit Law with respect to a Plan; or any matter claimed against an Insured solely by reason of his, her or its status as a Fiduciary, but only with respect to a Plan." Ex. R at p. 4. AIG admitted to National Union's responsibility to provide coverage only for ERISA based claims against Carabillo asserted in Counts VI, VIII, and IX of the Counterclaim. *See* Ex. R.

57.     In the First Coverage Evaluation Letter, AIG wrongfully agreed to allocate 60% and not 100% of any Loss associated with Carabillo's defense against the Counterclaim. *See* Ex. R at p. 4.

58.     In the First Coverage Evaluation Letter, AIG notes the "potential application" of several exclusions should new information or other developments later indicate said exclusions apply. *See* Ex. R at p. 5. The potential application of exclusions cannot be the basis for denial at this stage. An insurer must look only at the four corners

of the complaint or claim in determining coverage and cannot speculate by providing potential theories as a basis for denying coverage.

59.   AIG sent Carabillo a second letter, dated April 7, 2005, regarding National Union Employee Benefit Policy No. 874-44-03, purporting to "reevaluate" (but again disclaiming) coverage for Counts I and II of the Counterclaim. *See* Ex. U. ("Second Coverage Evaluation Letter").

60.   In its Second Coverage Evaluation Letter, AIG maintains its wrongful position that neither Counts I nor II of the Counterclaim fall within the definition of "Wrongful Act" of Employee Benefit Policy No. 874-44-03. *See* Ex. U at ¶ 2.

### CLAIMS FOR RELIEF

### COUNT I
**(Declaratory Judgment)**

### AISLIC Professional Liability Policy No. 348-92-35

61.   Carabillo reasserts and incorporates herein the allegations of paragraphs 1-60.

62.   AIG is an agent of AISLIC and, at all times herein mentioned, was acting within the purpose and scope of said agency.

63.   ULLICO, Carabillo's former employer, is the first named insured on AISLIC Professional Liability Policy No. 348-92-35, the effective dates of which are October 30, 2003 to October 30, 2004. Ex. M, Declarations.

{S0308111.1}

64.     The "coverage analyses" rendered by AIG improperly refer to deleted and amended policy provisions and fail to take any account of the Employed Lawyer's Endorsement attached to AISLIC Professional Liability Policy No. 348-92-35 as Endorsement No. 6.

65.     AISLIC Professional Liability Policy No. 348-92-35, Endorsement No. 6, amends the policy definition of "Insured" to include "any person admitted to practice law who is, was, or becomes employed as a lawyer full time and salaried by the Named Insured, (herein referred to as an 'Employed Lawyer')." Ex. M at End. 6, ¶ 2.

66.     Carabillo was an Employed Lawyer of ULLICO and therefore qualifies as an "Insured" under AISLIC Professional Liability Policy No. 348-92-35.

67.     In Endorsement No. 6 to AISLIC Professional Liability Policy No. 348-92-35, AISLIC agreed "to pay on behalf of the Employed Lawyer all sums which the Employed Lawyer shall become legally obligated to pay as damages because of any claim, including claims for Personal Injury, first made against the Employed Lawyer and reported in writing to the Company during the Policy Period, arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyers, except for such damages which the Named Insured shall indemnify such Employed Lawyer." Ex. M at End. 6, ¶ 1 at 1(a).

68.     In Endorsement No. 6 to AISLIC Professional Liability Policy No. 348-92-35, AISLIC agreed "to pay on behalf of the Named Insured all sums which the Named Insured may be required or permitted by law to indemnify an Employed Lawyer for any

sum which the Employed Lawyer becomes legally obligated to pay as Defense Costs, Charges and Expenses or damages because of any claim, including claims for Personal Injury, first made against the Employed Lawyer and reported in writing to the Company during the Policy Period arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyer while acting in the course of the said Employed Lawyer's employment by the Named Insured." Ex. M at End. 6, ¶ 1 at 1(b).

69.     Under Endorsement No. 6 to AISLIC Professional Liability Policy No. 348-92-35, "Wrongful Act" is defined as "any negligent act, error or omission, or any offense contained in the definition of Personal Injury." Ex. M at End. 6, ¶ 3 at 7.

70.     The allegations asserted against Carabillo in Count I of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Professional Liability Policy No. 348-92-35.

71.     The allegations asserted against Carabillo in Count II of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Professional Liability Policy No. 348-92-35.

72.     The allegations asserted against Carabillo in Count VI of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Professional Liability Policy No. 348-92-35.

73.     The allegations asserted against Carabillo in Count VIII of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Professional Liability Policy No. 348-92-35.

74.     The allegations asserted against Carabillo in Count IX of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Professional Liability Policy No. 348-92-35.

75.     Each and every allegation asserted against Carabillo in the Counterclaim qualifies as an alleged "Wrongful Act" under AISLIC Professional Liability Policy No. 348-92-35.

76.     The Employed Lawyers' Endorsement to AISLIC Professional Liability Policy No. 348-92-35 confers coverage on Carabillo (for whom, among other employed lawyers, ULLICO specifically purchased professional liability insurance coverage) for each count asserted in the Counterclaim.

77.     AISLIC received notice of an occurrence which might reasonably have been expected to give rise to a claim against Carabillo for an alleged Wrongful Act occurring during or prior to the Policy Period and was advised of the nature of the occurrence and specifics of the possible Wrongful Act as required by AISLIC Policy No. 348-92-35.

78.     AISLIC cannot assert improper notice as a defense to coverage where notice was not raised in coverage denial letters.

79.     AISLIC received proper notice of ULLICO's Counterclaim against Carabillo as required by AISLIC Professional Liability Policy No. 348-92-35.

80.     AISLIC owes Carabillo a defense under AISLIC Professional Liability Policy No. 348-92-35 for the Counterclaim asserted against him by ULLICO, *et al.*

81.     AISLIC owes Carabillo indemnity under AISLIC Professional Liability Policy No. 348-92-35 for the Counterclaim asserted against him by ULLICO, *et al.*

### AISLIC Professional Liability Policy No. 279-91-19

82.     ULLICO is the first named insured on AISLIC Professional Liability Policy No. 279-91-19, the effective dates of which are October 30, 2002 to October 30, 2003. Ex. N, Declarations.

83.     AISLIC Professional Liability Policy No. 279-91-19, Endorsement No. 6, amends the policy definition of "Insured" to include "any person admitted to practice law who is, was, or becomes employed as a lawyer full time and salaried by the Named Insured, (herein referred to as an 'Employed Lawyer')." Ex. N at End. 6, ¶ 2.

84.     Carabillo was an Employed Lawyer of ULLICO and therefore qualifies as an "Insured" under AISLIC Professional Liability Policy No. 279-91-19.

85.     In Endorsement No. 6 to AISLIC Professional Liability Policy No. 279-91-19, AISLIC agreed "to pay on behalf of the Employed Lawyer all sums which the Employed Lawyer shall become legally obligated to pay as damages because of any claim, including claims for Personal Injury, first made against the Employed Lawyer and reported in writing to the Company during the Policy Period, arising out of any Wrongful

{S0308111.1}

Act of the Employed Lawyer in rendering or failing to render professional services as a lawyers, except for such damages which the Named Insured shall indemnify such Employed Lawyer." Ex. N at End. 6, ¶ 1 at 1(a).

86.    In Endorsement No. 6 to AISLIC Professional Liability Policy No. 279-91-19, AISLIC agreed "to pay on behalf of the Named Insured all sums which the Named Insured may be required or permitted by law to indemnify an Employed Lawyer for any sum which the Employed Lawyer becomes legally obligated to pay as Defense Costs, Charges and Expenses or damages because of any claim, including claims for Personal Injury, first made against the Employed Lawyer and reported in writing to the Company during the Policy Period arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyer while acting in the course of the said Employed Lawyer's employment by the Named Insured." Ex. N at End. 6, ¶ 1 at 1(b).

87.    Under Endorsement No. 6 to AISLIC Professional Liability Policy No. 279-91-19, "Wrongful Act" is defined as "any negligent act, error or omission, or any offense contained in the definition of Personal Injury." Ex. N at End. 6, ¶ 3 at 7.

88.    The allegations asserted against Carabillo in Count I of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Professional Liability Policy No. 279-91-19.

89.     The allegations asserted against Carabillo in Count II of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Professional Liability Policy No. 279-91-19.

90.     The allegations asserted against Carabillo in Count VI of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Professional Liability Policy No. 279-91-19.

91.     The allegations asserted against Carabillo in Count VIII of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Professional Liability Policy No. 279-91-19.

92.     The allegations asserted against Carabillo in Count IX of the Counterclaim sound in tort and qualify as purported negligent acts, errors, or omissions under AISLIC Professional Liability Policy No. 279-91-19.

93.     Each and every allegation asserted against Carabillo in the Counterclaim qualifies as an alleged "Wrongful Act" under AISLIC Professional Liability Policy No. 279-91-19.

94.     The Employed Lawyers' Endorsement to AISLIC Professional Liability Policy No. 279-91-19 confers coverage on Carabillo (for whom, among other employed lawyers, ULLICO specifically purchased professional liability insurance coverage) for each count asserted in the Counterclaim.

95.     AISLIC received notice of an occurrence which might reasonably have been expected to give rise to a claim against Carabillo for an alleged Wrongful Act

occurring during or prior to the Policy Period and was advised of the nature of the occurrence and specifics of the possible Wrongful Act as required by AISLIC Professional Liability Policy No. 279-91-19.

96.    AISLIC received notice of a claim, imputed through the knowledge of its agent AIG, during relevant policy periods.

97.    AISLIC cannot assert improper notice as a defense to coverage where notice was not raised in coverage denial letters.

98.    AISLIC received proper notice of ULLICO's Counterclaim against Carabillo as required by AISLIC Professional Liability Policy No. 279-91-19.

99.    AISLIC owes Carabillo a defense under AISLIC Professional Liability Policy No. 279-91-19 for the Counterclaim asserted against him by ULLICO, *et al.*

100.    AISLIC owes Carabillo indemnity under AISLIC Professional Liability Policy No. 279-91-19 for the Counterclaim asserted against him by ULLICO, *et al.*

### Other AISLIC Policies

101.    Carabillo may qualify as an "Insured" under other applicable AISLIC policies, copies of which he has requested but has not received.

102.    Carabillo may be entitled to a defense and indemnity from AISLIC for the Counterclaim asserted against him by ULLICO, *et al.*, under other AISLIC policies, copies of which he has requested but has not received.

### National Union Directors and Officers Policies No. 299-96-17 and 495-36-84

103.    AIG is an agent of National Union and, at all times herein mentioned, was acting within the purpose and scope of said agency.

104.   ULLICO is the first named insured on the National Union Directors and Officers Policies No. 299-96-17 (effective July 19, 2003 - July 19, 2004, *see* Ex. P, Declarations) 495-36-84 (effective October 30, 2002 to October 30, 2003, *see* Ex. Q, Declarations) and Run-Off Endorsement to Policy No. 495-36-84 (effective July 19, 2003).

105.   National Union Directors and Officers Policies No. 299-96-17 and 495-36-84 provide the policy shall pay the "Loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period . . . for any actual or alleged Wrongful Act in their respective capacities as Directors, Officers or Employees of the Company except when and to the extent the Company has indemnified such Insureds." Ex. P and Q at p.1.

106.   The "coverage analysis" rendered by AIG improperly disclaims coverage under Directors and Officers Policy No. 299-96-17 and Run-Off Endorsement to Policy No. 495-36-84 on the basis of the insured versus insured exception which precludes payment for Loss in connection with "a claim:(i) which is brought by any Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured." Ex. P at p. 5; Ex. Q at p. 7.

107.   The allegations asserted against Carabillo in the Counterclaim were not brought by an insured as defined by the insured versus insured exception and the clause is inapplicable. The claims against Carabillo were brought by or at the direction of a newly

elected ULLICO Board under whom Carabillo never served and, therefore, the claim against Carabillo is in essence a "totally independent" shareholder derivative suit.

108.   AIG wrongfully claims the Counterclaim falls under a "Prior Acts" exclusion to Directors and Officers Policy No. 299-96-17, Endorsement 16.   National Union received notice of an occurrence which might reasonably have been expected to give rise to a claim against Carabillo for alleged Wrongful Acts occurring during the Policy Period and was advised of the nature of the occurrence and specifics of the possible Wrongful Act as required by National Union Directors and Officers Policy No. 299-96-17 and Run-Off Endorsement to Policy No. 495-36-84.

109.   National Union acknowledges proper notice of ULLICO's Counterclaim against Carabillo as required by National Union Directors and Officers Policies No. 299-96-17 and 495-36-84.

110.   National Union owes Carabillo a defense under Directors and Officers National Union Policies No. 299-96-17 and 495-36-84 for the Counterclaim asserted against him by ULLICO, *et al.*

111.   National Union owes Carabillo indemnity under Directors and Officers National Union Policies No. 299-96-17 and 495-36-84 and for the Counterclaim asserted against him by ULLICO, *et al.*

### National Union Employee Benefit Policies No. 874-44-03 and 548-03-72

112.   ULLICO is the first named insured on National Union Employee Benefit Policies No. 874-44-03 (effective October 30, 2001 to October 30, 2002) and No. 548-03-72 (effective October 30, 2003 to October 30, 2004).   See Ex. S and T, Declarations.

113. The "coverage analysis" rendered by AIG improperly denies coverage under Employee Benefit Policy No. 548-03-72 by stating that claims do not fall within the applicable policy periods of this policy.

114. The coverage analysis improperly denies coverage for Counts I and II of the Counterclaim under any policy and fails to recognize the acts of Carabillo as "Wrongful Acts" under the policy.

115. National Union Employee Benefit Policies No. 874-44-03 and 548-03-72, provide the policy shall pay the "Loss of each and every Insured arising from a Claim first made against an Insured during the Policy Period . . . for any actual or alleged Wrongful Act by any such Insured. . . ." Ex. S and T at p. 1.

116. Under National Union Employee Benefit Policies No. 874-44-03 and 548-03-72, a "Wrongful Act" is defined, in part, as "a violation of any of the responsibilities, obligations or duties imposed upon fiduciaries of ERISA; or any matter claimed against an Insured solely by reason of his, her, or its status as a Fiduciary. . . with respect to a Plan." Ex. S at p. 7; Ex. T at p. 5.

117. The allegations asserted against Carabillo in Counts I and II relate to and are inextricably tied to Carabillo's responsibilities, obligations, and duties as a fiduciary of an employee benefits plan and are claimed against him solely by reason of his status as a fiduciary with respect to certain plans and qualify a wrongful acts under Employee Benefit Policies No. 874-44-03 and 548-03-72. *See* Ex. B-2 at p. 30-35.

118. The allegations asserted against Carabillo in Count I of the Counterclaim encompasses all of the factual allegations related to the various stock transactions and plans alleging that Carabillo breached corporate law fiduciary duties in connection with

stock transactions under the Non-Qualified Deferred Compensation Plan, improperly increased benefits under the Auxiliary Retirement Benefits Plan, and created potential obligations to other ULLICO employees under the ULLICO Qualified Pension Plan and Trust and Auxiliary Retirement Benefits Plan. *See* Ex. B-2 at p. 30-33.

119.   In Count II, Counterclaim Plaintiffs allege a breach of applicable standard of professional care with respect to Carabillo's duties as in-house chief legal counsel regarding certain stock transactions related to the Auxiliary Retirement Benefits Plan and the Deferred Compensation Plan. *See* Ex. B-2 at p. 33-35.

120.   All allegations asserted in both Counts I and II against Carabillo qualify as a "Wrongful Act" under National Union Employee Benefit Policies 874-44-03 and 548-03-72.

121.   National Union received notice of an occurrence which might reasonably have been expected to give rise to a claim against Carabillo for alleged Wrongful Acts occurring during or prior to the Policy Period and was advised of the nature of the occurrence and specifics of the possible Wrongful Act as required by National Union Employee Benefit Policies 874-44-03 and 548-03-72.

122.   National Union acknowledges proper notice of ULLICO's Counterclaim against Carabillo as required by National Union Employee Benefit Policy No. 874-44-03 and 548-03-72.

123.   National Union owes Carabillo a defense under National Union Employee Benefit Policies No. 874-44-03 and 548-03-72 for the Counterclaim asserted against him by ULLICO, *et al.*

124.   National Union owes Carabillo indemnity under National Union Employee Benefit Policies No. 874-44-03 and 548-03-72 for the Counterclaim asserted against him by ULLICO, *et al.*

### Other National Union Policies

125.   Carabillo may qualify as an "Insured" under other applicable National Union policies, including but not limited to the Directors, Officers and Private Company Liability Insurance Policy from 2001-2002 and Employee Benefit Plan Fiduciary Liability Insurance Policy from 2002-2003, copies of which he has requested but has not received.

126.   Carabillo may be entitled to a defense and indemnity from National Union for the Counterclaim asserted against him by ULLICO, *et al.*, under other National Union policies, copies of which he has requested but has not received.

### COUNT II
### (Bad Faith Against AISLIC and National Union)

127.   Carabillo reasserts and incorporates herein the allegations of paragraphs 1-126

128.   AISLIC's denial of coverage under Professional Liability Policy No. 348-92-35, through its agent, AIG, is in gross derogation of an insurer's obligation to make a good faith evaluation of its duty to defend based on the allegations in the Counterclaim and whether such allegations are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.

129.   National Union's denial of coverage under Directors and Officers Policies No. 299-96-17 and 495-36-84 and Employee Benefit Policy 874-44-03 through its agent,

AIG, is in gross derogation of an insurer's obligation to make a good faith evaluation of its duty to defend based on the allegations in the Counterclaim and whether such allegations are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.

130.   AISLIC's utter and complete failure to respond to Carabillo's November 20, 2003 request for coverage under AISLIC Professional Liability Policy No. 279-91-19 and other potentially applicable AISLIC policies is in gross derogation of an insurer's obligation to make a good faith evaluation of its duty to defend and indemnify based on the allegations in the Counterclaim and whether such allegations are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.

131.   National Union's utter and complete failure to respond to Carabillo's November 20, 2003 request for coverage other potentially applicable National Union policies is in gross derogation of an insurer's obligation to make a good faith evaluation of its duty to defend and indemnify based on the allegations in the Counterclaim and whether such allegations are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.

132.   Both Defendants' failure to provide copies of all potentially applicable policies for the years 1996 to date is in gross derogation of an insurer's obligations to its insured.

133.   As a direct result of Defendants' bad faith failure to respond timely and appropriately to his claims for insurance coverage, Carabillo has been wrongfully

deprived of defense and indemnification, and as a result, has suffered annoyance, aggravation, and inconvenience.

134.   Defendants failure and refusal to honor its obligations to Carabillo constitutes extreme and outrageous behavior.

135.   With AISLIC's facially deficient coverage evaluations as to AISLIC Professional Liability Policy No. 348-92-35 and its categorical failure to respond in more than five months to Carabillo's claim for coverage under AISLIC Professional Liability Policy No. 279-91-19 or any other AISLIC policy that might confer coverage under the circumstances, AISLIC has intentionally or recklessly caused Carabillo severe emotional distress.

136.   With National Union's facially deficient coverage evaluations and its categorical failure to respond to Carabillo's demands for coverage under the policies set forth herein or any other National Union policy that might confer coverage under the circumstances, National Union has intentionally or recklessly caused Carabillo severe emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Joseph A. Carabillo prays that the Court grant him the following relief:

A      A declaration establishing Defendants' duty to defend and indemnify him;

B.     order that Defendants' reimburse him for costs previously expended in defense of the litigation brought by ULLICO, *et al.*;

{S0308111.1}                                    29

C.   an order that Defendants reimburse him for the fees and costs associated with bringing the instant declaratory judgment action to force Defendants to honor their undertakings;

D.   damages for aggravation and inconvenience;

E.   punitive damages;

F.   pre- and post-judgment interest; and

G.   any such other relief as this Court deems appropriate under these facts.

Respectfully submitted,

_____
Daniel G. Grove, Esquire (DC Bar #066399)
Jackson Kelly, PLLC
2401 Pennsylvania Avenue, N.W.
Suite 400
Washington, D.C. 20037
Telephone: (202) 973-0200
Fax: (202) 973-0247
*Counsel for Plaintiff Joseph A. Carabillo*