## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSEPH A. CARABILLO,            :
                                          :

        **Plaintiff,**         :
                                            :

v.                                   :        **Case No.: 1:04CV00970**
                                   :        **Judge:  Richard J. Leon**

AMERICAN INTERNATIONAL      :        **Next Event:**
SPECIALTY LINES INSURANCE   :
COMPANY,                  :

and                             :

NATIONAL UNION FIRE INSURANCE :
COMPANY OF PITTSBURGH, PA.   :

        **Defendants.**     :

### PLAINTIFF JOSEPH A. CARABILLO'S
### MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Joseph A. Carabillo ("Mr. Carabillo") asks the Court for a summary judgment in his favor, stating as follows:

1.      Mr. Carabillo seeks a declaratory judgment that American International Specialty Lines Insurance Company ("AISLIC") owes him a defense and indemnity under Professional Liability Insurance policies it issued to Mr. Carabillo's former employer, ULLICO, Inc. ("ULLICO") for claims asserted against Mr. Carabillo by ULLICO and others.

2.      Summary judgment is generally appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *New York State Bar Association v. Federal Trade Commission*, 2004 U.S. Dist. LEXIS 7698 (D. D.C. 2004).

3.      As set forth in the attached Memorandum in Support of Joseph A. Carabillo's Motion for Summary Judgment, incorporated herein by reference, the record demonstrates that there exists no genuine issue of material fact.

4.      As a former Employed Lawyer of ULLICO, and as a party against whom legal professional liability claims have been asserted by ULLICO, Mr. Carabillo's only client, Mr. Carabillo is entitled to insurance coverage as a matter of law under Professional Liability Insurance policies issued by AISLIC, and the terms, conditions, and exclusions upon which AISLIC relies to deny coverage do not work to preclude coverage.

WHEREFORE, Mr. Carabillo seeks a declaratory judgment that AISLIC owes him a defense and indemnity under any applicable Professional Liability Insurance policies issued by AISLIC to ULLICO.  Mr. Carabillo also prays that the Court would award him all fees and costs expended in defense of the litigation brought against him by ULLICO, et al.; all fees and costs associated with bringing the instant declaratory judgment action to force AISLIC to honor their undertakings; damages for aggravation and inconvenience; punitive damages; pre and post-judgment interest; and any such other relief as this Court deems appropriate.

Respectfully submitted,

_____/s/_____
Daniel C. Grove (DC Bar #066399 )
Jackson Kelly PLLC
2401 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20037
Telephone:  (202) 973-0200
Facsimile:  (202) 973-0232

Jill M. Obenchain, Esquire
*Pro Hac Vice*
P Office Box 553
Charleston, West Virginia 25322
Telephone:  (304) 340-1000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of December, 2005, a true copy of the foregoing Plaintiff Joseph A. Carabillo's Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, and proposed Order was served upon all counsel of record via Electronic Case Filing or as otherwise required by LCvR 5.4(d) of this Court's Local Rules.

_____/s/_____
Daniel G. Grove

308448

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JOSEPH A. CARABILLO  ,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.: 1:04CV00970** |
| | : | **Judge:  Richard J. Leon** |
| **AMERICAN INTERNATIONAL** | : | **Next Event:** |
| **SPECIALTY LINES INSURANCE** | : | |
| **COMPANY,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **NATIONAL UNION FIRE INSURANCE** | : | |
| **COMPANY OF PITTSBURGH, PA.** | : | |
| | : | |
| **Defendants.** | : | |

### MEMORANDUM IN SUPPORT OF
### PLAINTIFF JOSEPH A. CARABILLO'S
### MOTION FOR SUMMARY JUDGMENT

### I.  Statement of the Case

Joseph A. Carabillo, a lawyer, seeks a declaration establishing the duty of American International Specialty Lines Insurance Company ("AISLIC"), a professional liability carrier, to defend and indemnify him in civil cases alleging professional malpractice.

### II.  Introduction

For more than sixteen years, attorney Joseph A. Carabillo was employed by ULLICO Inc.("ULLICO")[1] in the company's legal department, serving most of that time as the company's Vice President and Chief Legal Officer.  In June of 2003, ULLICO wrongfully terminated his employment.  Said termination was alleged by ULLICO to have divested Mr. Carabillo's early

---

[1]  ULLICO emerged from the Union Labor Life Insurance Company in the late 1980s.  It is the holding company of nearly two dozen subsidiaries that provide a full range of insurance and financial services products to organized workers, their unions, and their union trust funds.

retirement pension benefits, upon which he intended to rely for his livelihood.  Soon thereafter, seeking to protect his benefits and contractual rights, Mr. Carabillo filed a civil action against ULLICO, challenging the actions of its Acting President and alleging that following a change of control and acting through new management, ULLICO had breached a contract with him, wrongfully terminated him, and improperly deprived him of his statutory rights under the Employee Retirement Income Security Act ("ERISA").

ULLICO, with four additional parties attempting to join it,[2] asserted a counterclaim against Mr. Carabillo and other individuals, accusing them of "self-dealing . . . in violation of [] fiduciary and contractual duties to, [sic] ULLICO and its shareholders."  *See* Am. Compl., Ex. B ("Counterclaim").   More specifically, the Counterclaim Plaintiffs accused Mr. Carabillo of breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, and unjust enrichment (Count I); professional negligence (Count II); acting *ultra vires* and in breach of fiduciary duties with respect to drafting, adopting and implementing an amendment to ULLICO's Qualified Pension Plan and Trust (Count VI); breach of fiduciary duty regarding personal receipts under ULLICO's Deferred Compensation Plan (Count VIII); and breach of fiduciary duty regarding receipts by Counterclaim Defendant Grelle under ULLICO's Deferred Compensation Plan (Count IX). *See id.*  By Answer filed December 16, 2003, Mr. Carabillo denied the allegations asserted against him. *See* Am. Compl., Ex. C.

While Mr. Carabillo's affirmative claims for pension benefits presented a fairly narrow universe of legal and factual issues, the Counterclaim Plaintiffs sought intentionally to inject

---

[2]  The following entities sought improperly to inject themselves into the case:  (1) ULLICO Inc. Employees' Life and Health Welfare Plan, (2) ULLICO Inc. Pension Plan and Trust, (3) Union Labor Life Auxiliary Retirement Benefits Plan, and (4) Mark Singleton, in his capacity and Plan Administrator.  Without intending to waive his objection to the method by which they appeared in the case, Mr. Carabillo will refer to ULLICO and these parties collectively as the "Counterclaim Plaintiffs."

convoluted and complex factual assertions and theories into that case, which has come to be known as "Carabillo I." Eventually, the United States District Court for the District of Columbia ("District Court"), before which Carabillo I is pending, determined that it would retain jurisdiction only of ERISA-based claims, which, it has determined, include (against Mr. Carabillo) Count VI (acting *ultra vires* and in breach of fiduciary duties with respect to drafting, adopting and implementing an amendment to ULLICO's Qualified Pension Plan and Trust), Count VIII (breach of fiduciary duty regarding personal receipts under ULLICO's Deferred Compensation Plan), and Count IX (breach of fiduciary duty regarding receipts by Counterclaim Defendant Grelle under ULLICO's Deferred Compensation Plan).[3]

Following the District Court's March 29, 2005, dismissal of Counts I and II in Carabillo I, the Counterclaim Plaintiffs, initiated lifting the stay on an earlier filed prophylactic "state" court action in the Superior Court of the District of Columbia ("Superior Court") (Civil Action No. 04-0000361 ["Carabillo III"][4]).   Counterclaim Plaintiffs moved to revive that case and its identical counts I, II, V, XII and XIII, the non ERISA-based claims. Only Count I (breach of corporate law duties) and Count II (professional negligence) of the Superior Court action are asserted against Mr. Carabillo.   Count I alleges that Mr. Carabillo breached corporate law fiduciary duties by "obtaining profits for [himself] from improper and self-interested transactions and permitting other senior officers and directors to do the same," "improperly profiting or

---

[3]  Partial coverage for the ERISA-based claims has been extended to Mr. Carabillo by AISLIC's sister company, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("NUFIC"), under an Employee Benefits Plan Fiduciary Liability policy, subject to a reservation of rights.  To the extent that NUFIC ultimately limits its coverage for Counts VI, VIII, and IX, Mr. Carabillo will look to other insurance carriers for any outstanding amounts due.

A Rule 12(b)(6) motion to dismiss is currently pending on the federal court claims.

[4]  "Carabillo II," Case No. 1:04CV00776 in the District Court, is Mr. Carabillo's appeal of the denial of his employee benefits.

otherwise benefiting from 'deemed investments' in ULLICO stock under the Non-Qualified Deferred Compensation Plan," "improperly increasing [his] benefits under the Auxiliary Retirement Benefits Plan," and "creat[ing] potential obligations to other ULLICO employees under the ULLICO Qualified Pension Plan and Trust and Auxiliary Retirement Benefits Plan." Sup. Ct. Compl., ¶¶ 85-95, Ex. 1.   Count II alleges that Mr. Carabillo breached the applicable standard of professional care with respect to his duties as in-house chief legal counsel regarding certain stock transactions "and other transactions and activities . . . ." *Id.,* ¶¶ 97-100.

The Counterclaim fails to recognize the fact that Mr. Carabillo's actions were taken for the benefit of employees at all levels and any benefits received by senior officers and directors were incidental to his and other's efforts.

Though discovery has not begun in earnest in either the federal or state case, the Counterclaim Plaintiffs' "scorched earth" litigation strategies and their intended effect on Mr. Carabillo are apparent.   Only more frustrating for Mr. Carabillo is having to spend additional time and effort to obtain the insurance coverage to which he is entitled, even the professional liability coverage he urged, in his capacity as ULLICO's Chief Legal Officer, the company purchase for the protection of all employed lawyers, including Mr. Carabillo.

### III. Claims Background

In April 2003, the Board of Directors of ULLICO (the "ULLICO Board" or "the Board") established a program providing an early retirement benefit for all qualifying employees.  Shortly thereafter, ULLICO informed Mr. Carabillo of his right to participate in that program.   Mr. Carabillo accepted that offer thereby agreeing that he *would* participate. Ex. 2. To assist in the inculcation of ULLICO's new legal staff, Mr. Carabillo wound-up all his duties and responsibilities, voluntarily relinquished his duties as Chief Legal Officer, and made himself

available for consultation as needed.

On May 7, 2003, ULLICO formally acknowledged Mr. Carabillo's acceptance of retirement under the early retirement program, which was slated to begin payments on June 1, 2003. The last day Mr. Carabillo could possibly work was Tuesday, May 30, 2003. On May 31, 2003, the day after his last eligible day of work and one day before his benefit payments would actually begin, ULLICO illegally "terminated" Mr. Carabillo's employment allegedly "for cause" by delivering to him a letter by messenger. Ex. 3. The letter, delivered to Mr. Carabillo on a Saturday, set forth no specific reasons for termination that could justify "cause." In fact, the letter merely states that Mr. Carabillo's employment is terminated for cause and that "the report prepared under the direction of Gov. Thompson suggests [he] **may have** breached certain obligations to ULLICO, including [his] fiduciary duties of loyalty and care owed to ULLICO" and "ULLICO is unable to place ongoing confidence in [his] judgment . . . " *See* Ex. 3 (emphasis added). The vague correspondence sets forth no indication of what "certain" obligations were nor how Mr. Carabillo breached any fiduciary duties. In addition, it is hard to perceive how ongoing confidence in Mr. Carabillo could play any role since he was already effectively retired on the Saturday when he received his "letter of termination" and his benefits were to start the next day. *Central to this controversy is the fact that during Mr. Carabillo's administrative leave of absence, ULLICO elected a slate of fifteen new directors, which fifteen people constituted the majority of a board of directors comprised of twenty-eight total members. ULLICO also appointed new management and new fiduciaries to benefit plans resulting in essentially a complete change in the individuals representing and managing the company. See* Ex. 4.

After he was wrongfully terminated, Mr. Carabillo brought suit against ULLICO (with its new Board of Directors), challenging his termination and the improper withholding of his

pension benefits.  It was only after ULLICO counter-sued him the following Fall, that ULLICO attempted to create a basis for his termination.  In their Complaint, the Counterclaim Plaintiffs rehash past allegations of self-dealing concerning Carabillo and others.  These allegations cannot justify his termination.  The allegations were investigated fully in the years that preceded Mr. Carabillo's retirement and it was determined that there was no illegal conduct or wrongdoing by the directors and officers, including Mr. Carabillo.[5]  Based on Mr. Carabillo's termination letter, providing no specific or just reasons for termination, and the improper allegations in the Counterclaim, ULLICO set forth no basis upon which termination of Mr. Carabillo was appropriate.  As such, ULLICO's termination of Mr. Carabillo was merely a vindictive effort to avoid payment of benefits.

---

[5]  The original allegations against Mr. Carabillo, set forth in an opinion submitted to the former ULLICO Board by the law firm of Winston & Strawn and its Chairman, former Governor James R. Thompson ("Winston & Strawn Report" dated November 26, 2002), were largely discredited by independent reviewers, including ULLICO's counsel (Sidley Austin Brown & Wood LLP) and James J. Hanks, one of the foremost experts on Maryland corporate law.  Eventually, a Special Committee of ULLICO's former Board of Directors, comprised entirely of members who were not involved in any of the transactions under scrutiny, concluded that it *did not agree* with the Winston & Strawn Report and that "the sales and repurchase of ULLICO shares of officers and directors were transacted in accordance with provisions and procedures developed by competent legal and accounting professionals, did not materially violate corporate by-laws or previous Board actions, and was [sic] consistent with the culture and traditional decision making procedures of ULLICO."  *See* Report of the Special Committee of the Board of Directors delivered to the board on March 28, 2003.  Ex. 5.

At a March 28, 2003 meeting, ULLICO's then-Board of Directors announced that it had determined "that a return of profits (by Mr. Carabillo and others) would not be in the best interests of the Company *since there was no illegal conduct or wrongdoing by the directors and officers* as determined by [Winston & Strawn] and the Special Committee of the Board of Directors."  *See* Minutes Ex. 6 (emphasis added).  At that same Board meeting, Mr. Carabillo's decision to retire was announced.  *See Id.*  Granted a sense of repose from these tumultuous events based on ULLICO's ratification of the views of the Special Committee, Mr. Carabillo prepared himself for retirement and, thereafter, accepted early retirement under ULLICO's early retirement program which was applicable to more than thirty employees and aimed at everyone age 55 and up with fifteen (15) years of service with ULLICO, one of which was Mr. Carabillo.  That sense of repose proved to be fleeting, for Mr. Carabillo was "fired" on a Saturday one day before his pension benefits were to commence.

## IV.  Coverage Background

On July 18, 2003, Mr. Carabillo filed his action against ULLICO to which an Answer and Counterclaim were interposed on October 27, 2003 (amended November 3, 2003).  Before answering the Counterclaim, Mr. Carabillo, through his attorney, notified ULLICO's insurance broker, The McLaughlin Company ("McLaughlin") in a letter dated November 20, 2003, that a complaint had been filed against him by ULLICO, et al., and that he was seeking defense costs therefore.  *See* Am. Compl., Ex. E.  McLaughlin was ULLICO's risk manager and broker and fulfilled these roles in the relevant time periods.  Mr. Carabillo asked McLaughlin to submit his claim for coverage to all applicable insurance carriers "for the years 1996 to date" and to provide him with a complete listing of the coverage available during the relevant period along with copies of all applicable policies.  *See id.*  (The renewed allegations of self-dealing asserted in the Counterclaim are purported to have taken place "primarily during the period 1998-2001," though several of the Counterclaimants' averments go back to 1997 and before.)  In a letter dated November 26, 2003, The McLaughlin Company provided notice of a potential claim to AISLIC under the relevant professional liability policies.  *See* Ex. 7.

Having heard nothing in response to his claims for coverage, Mr. Carabillo, through his attorney, corresponded with McLaughlin again by letter dated December 9, 2003, seeking assurances of coverage in his capacity as a Counterclaim Defendant and requesting a timetable under which he would be advised of the insurers' responses to his demand with all potentially applicable carriers.  *See* Am. Compl., Ex. F.  By letter dated January 7, 2004, Mr. Carabillo, through his attorney, memorialized to McLaughlin his understanding that the brokerage firm had received and was processing his claims for coverage.  *See* Am. Compl., Ex. G. Though by that date, McLaughlin had forwarded copies of several insurance policies to Mr. Carabillo, including

AISLIC Insurance Company's Professional Liability Insurance Policy ("Professional Liability Policy") No. 279-91-19 effective October 30, 2002 until October 30, 2003, neither coverage nor consent to Mr. Carabillo's chosen representation had been confirmed or denied by any carrier. *See* Am. Compl., Ex. N.  Through his attorney, Mr. Carabillo reiterated to McLaughlin by letter dated January 14, 2004, the concerns he had raised in his January 7, 2004 letter, stating that it was "crucial that [he] be informed" of the carriers' intentions. *See* Am. Compl., Ex. H.

McLaughlin subsequently forwarded copies of two additional policies to Mr. Carabillo, including AISLIC Professional Liability Policy No. 348-92-35 effective October 30, 2003 until October 30, 2004. *See* Am. Compl., Ex. M.  Mr. Carabillo, through his attorney, made numerous additional telephone calls to McLaughlin and other purported agents of the insurers identified in the insurance policies to which Mr. Carabillo was provided access.  Nearly three months after submitting notice to McLaughlin of the claims asserted against him, Mr. Carabillo received a letter from AIG Technical Services ("AIG") dated February 11, 2004, purporting to evaluate coverage as an authorized agent of American International Specialty Lines Insurance Company ("AISLIC"), the Defendant in the instant action, under Errors and Omissions Policy No. 348-92-35. *See* Am. Compl., Ex. K ("First Coverage Evaluation Letter").  Through AIG, AISLIC denied coverage (*see id.*), however, AIG had evaluated coverage with respect to the allegations made *by Mr. Carabillo* against ULLICO, despite the clear statement in his request for coverage that he was not seeking coverage for his affirmative claims. Needless to say, Mr. Carabillo was completely dissatisfied with AISLIC's slow and incongruous response to his demand for coverage.

Two weeks later, AIG sent Mr. Carabillo a second letter dated February 25, 2004, purporting to "reevaluate" his demand for coverage based on the claims for which Mr. Carabillo

sought defense and indemnity.  *See* Am. Compl., Ex. L ("Second Coverage Evaluation Letter").

Again, AISLIC, through AIG, denied coverage.  *See id.*  First, while stating that it "[had] not

made any determination as to the validity of [ULLICO's] allegations" and "[did] not wish to

suggest that liability exist[ed]" (*id.* at ¶ 4), incredibly, AIG concluded that Mr. Carabillo, as a

plaintiff against ULLICO, did not meet the policy's definition of "Insured" in light of ULLICO's

*allegation* that he acted outside the scope of his duties (*id.* at ¶¶ 6 and 7).

Second, and more astonishingly, AIG based its disclaimer solely on an evaluation of the

policy's primary insuring agreement, failing to perceive, consider, or even mention the

applicability of the policy's Employed Lawyers Endorsement, which provides professional

liability insurance coverage to all lawyers employed by ULLICO.  Mr. Carabillo found this

oversight to be especially egregious in light of ULLICO's plain allegations of misconduct by Mr.

Carabillo *in his capacity "as a lawyer* licensed . . . to provide legal advice in accordance with []

prevailing standards of professional care applicable to lawyers employed as in-house chief legal

counsel" (*see* Am. Compl., Ex. B, ¶ 97 (emphasis added)).

Finally, AIG attempted to bolster its coverage denial by including a catchall paragraph

reciting in arbitrary fashion "certain policy exclusions" that "could [be] implicate[d]" by the

allegations set forth in the Counterclaim.  *See* Am. Compl., Ex. L at ¶ 12.  First, AIG raised

Exclusions (a) and (b), applying "to any criminal act" and "to any dishonest or fraudulent act or

omission," stating that "if [Mr. Carabillo's] actions . . . were criminal or fraudulent, the above-

referenced exclusions are applicable."  *Id.*  AIG raised these exclusions despite the fact that

ULLICO did not allege fraud but asserts only a breach of duty.  ULLICO had not asserted any

allegations of a criminal act.  ULLICO filed a civil complaint and cannot allege that a criminal

act occurred absent a basis. Similarly, AIG cannot assume a criminal act based on mere allegations of a breach of duty. Accordingly, exclusions (a) and (b) do not apply.

Further, AIG failed to recognize or acknowledge that even if criminal conduct was alleged, Exclusion (a) was amended by Policy Endorsement #2 to provide coverage for claims "arising out of or alleging any criminal, malicious, dishonest, or fraudulent act, error or omission of any Insured . . ." and that by way of said Endorsement, the [insurer] "*shall defend* any action brought against the Insured alleging such Wrongful Act . . ." (said monies to be reimbursed should the allegations be "subsequently proven by a final adjudication unfavorable to the Insured"). *See* Am. Compl., Ex. M, End. 2 (emphasis added).

AIG also speciously denied coverage based on Exclusion (f), applying to claims brought by one Insured against another ("insured v. insured" exclusion), stating that because the Named Insured, ULLICO, filed suit against Mr. Carabillo, "a purported Insured . . . , coverage is barred." AIG asserts this despite the fact that the Counterclaim against Mr. Carabillo was attempted to be brought by four *other* counterclaim plaintiffs besides ULLICO, which is clear on the face of the Counterclaim. Am. Compl., Ex. M, ¶ 12. Moreover, Exclusion (f) was modified, if not replaced, by an "insured v. insured" exclusion set forth in Policy Endorsement #6, the provision under which the coverage sought *ought* to have been evaluated (*see* Am. Compl., Ex. M,  End. 6, pp. 2 and 3).

In answer to the allegations set forth in the instant action, AISLIC reasserts several of the policy provisions and exclusions upon which AIG relied in its Second Coverage Evaluation Letter. AISLIC supplements its position with reference to the Employed Lawyers Endorsement (Endorsement #6) – its first recognition of the applicability of that critical section of the Policy.

In sum, AISLIC denies that it owes Mr. Carabillo a defense or indemnity based on each the following:

1.    The purported applicability of "insured v. insured" Exclusion (f), as amended and supplemented;

2.    The purported applicability of Exclusions EPL-a) and EPL-c) from Endorsement #6, which are "insured v. insured" and "directors and officers" exclusions, respectively;

3.    The purported applicability of Exclusion (o) for ERISA-based claims;

4.    The purported applicability of Exclusion (q), omitting coverage for claims arising out of or connected with the performance of services for anyone affiliated with an insured by common control or ownership to ERISA-based allegations;

5.    An assertion that Mr. Carabillo acted outside the scope of his employment and does not qualify as an "insured;"[6]

6.    An assertion that Mr. Carabillo was not an "Insured" at the time he provided notice of the claims asserted against him;

7.    A denial that AISLIC received notice of an occurrence which might reasonably have been expected to give rise to a claim against Mr. Carabillo for an alleged Wrongful Act occurring during or prior to the Policy Period or that it was advised of the nature of the occurrence and specifics of the possible Wrongful Act; and

8.    A denial that AISLIC received proper notice of ULLICO's Counterclaim against Mr. Carabillo.

---

[6] AISLIC does not raise Policy Exclusions (a) and (b) directly in its Answer and Counterclaim, as it did in its Second Coverage Evaluation Letter (*see* p. 9, *infra*).

This attempt to augment its arguments after a clear determination in bad faith is in itself an act of bad faith.

## V.  Policy Provisions
### AISLIC Professional Liability Policy No. 348-92-35

ULLICO is the first named insured on AISLIC Professional Liability Policy No. 348-92-35, the effective dates of which are October 30, 2003 to October 30, 2004.  *See* Am. Compl., Ex. M, Declarations.  Endorsement #6 amends the policy definition of "Insured" to include "any person admitted to practice law who is, was, or becomes employed as a lawyer full time and salaried by the Named Insured, (herein referred to as an 'Employed Lawyer')."  *Id.* at End. 6, ¶ 2.  In Endorsement #6, AISLIC agrees to pay on behalf of the Employed Lawyer:

> all sums which the Employed Lawyer shall become legally obligated to pay as damages because of any claim ... first made against the Employed Lawyer and reported in writing to the Company during the Policy Period, arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyer....

*Id.* at End. 6, ¶ 1 at 1(a).  AISLIC also agrees to pay on behalf of the Named Insured:

> all sums which the Named Insured may be required or permitted by law to indemnify an Employed Lawyer for any sum which the Employed Lawyer becomes legally obligated to pay as Defense Costs, Charges and Expenses or damages because of any claim, including claims for Personal Injury, first made against the Employed Lawyer and reported in writing to the Company during the Policy Period arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyer while acting in the course of the said Employed Lawyer's employment by the Named Insured.

*Id.* at End. 6, ¶ 1 at 1(b).  Under Endorsement #6, "Wrongful Act" is defined as "any negligent act, error or omission, or any offense contained in the definition of Personal Injury."  *Id.* at End. 6, ¶ 3 at 7.

**AISLIC Professional Liability Policy No. 279-91-19**

ULLICO is the first named insured on AISLIC Professional Liability Policy No. 279-91-19, the effective dates of which are October 30, 2002 to October 30, 2003. *See* Am. Compl., Ex. N, Declarations. AISLIC Professional Liability Policy No. 279-91-19, Endorsement #6, amends the policy definition of "Insured" to include "any person admitted to practice law who is, was, or becomes employed as a lawyer full time and salaried by the Named Insured, (herein referred to as an 'Employed Lawyer')." *Id.* at End. 6, ¶ 2. In Endorsement #6, AISLIC agrees to pay on behalf of the Employed Lawyer:

> all sums which the Employed Lawyer shall become legally obligated to pay as damages because of any claim ... first made against the Employed Lawyer and reported in writing to the Company during the Policy Period, arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyer....

*Id.* at End. 6, ¶ 1 at 1(a). AISLIC also agrees to pay on behalf of the Named Insured:

> all sums which the Named Insured may be required or permitted by law to indemnify an Employed Lawyer for any sum which the Employed Lawyer becomes legally obligated to pay as Defense Costs, Charges and Expenses or damages because of any claim, including claims for Personal Injury, first made against the Employed Lawyer and reported in writing to the Company during the Policy Period arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyer while acting in the course of the said Employed Lawyer's employment by the Named Insured.

*Id.* at End. 6, ¶ 1 at 1(b). Under Endorsement #6, "Wrongful Act" is defined as "any negligent act, error or omission, or any offense contained in the definition of Personal Injury." *Id.* at End. 6, ¶ 3 at 7.

### Legal Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). To prevail under Rule 56, the moving party must show that the non-moving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). It is generally understood that when considering a motion for summary judgment a court must "draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true." *Greene v. Amritsar Auto Servs. Co.*, 206 F.Supp.2d 4, 7 (D.D.C. 2002) (citing *Anderson*, 477 U.S. at 255). The non-moving party must establish more than "the mere existence of a scintilla of evidence in support of [his] position." *Anderson*, 477 U.S. at 252. The District of Columbia Circuit has stated that the non-moving party may not rely solely on mere conclusory allegations. *Greene v. Dalton*, 334 U.S. App. D.C. 92, 164 F.3d 671, 675 (D.C. Cir. 1999). Thus, "if the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### VI. Argument

The "coverage analyses" rendered by AIG on behalf of AISLIC, which analyses AISLIC adopts, in part, in answer to Mr. Carabillo's Complaint, improperly refers to deleted or modified policy provisions and fails to take any account of the Employed Lawyer's Endorsement attached

to AISLIC Policy Nos. 348-92-35 and 279-91-19 as Endorsement #6.  Mr. Carabillo was an Employed Lawyer of ULLICO, "[a] person admitted to practice law who is, was, or becomes employed as a lawyer full time and salaried by the Named Insured," and therefore qualifies as an "Insured" under Endorsement #6.  The allegations asserted against Mr. Carabillo by ULLICO, et al. in the federal and state court actions sound in tort and qualify as purported negligent acts, errors, or omissions ("Wrongful Acts") under Endorsement #6; therefore, the Employed Lawyers' Endorsement confers coverage on Mr. Carabillo (for whom, among other employed lawyers, ULLICO specifically purchased professional liability insurance coverage) for each claim asserted.

**A.    The "insured v. insured" exclusions upon which AISLIC relies to deny coverage do not apply**.

**1.    The "insured v. insured" exclusions are, by their terms, in direct conflict with the Employed Lawyers coverage purchased by ULLICO.**

To construe and interpret an insurance policy, the Court applies general contract principles.  *See Flecha De Lima v. International Medical Group, Inc.*, 2004 WL 2745654, *2 (D.C. Super. Nov. 29, 2004).  Any exclusions from coverage are to be construed narrowly.  *See Loffler v. Boston Ins. Co.,* 120 A.2d 691, 693 (D.C. 1956) ("It is the duty of the insurer to spell out in plainest terms any exclusionary or delimiting policy provisions.").

Exclusion (f), which appears in the main coverage part of each AISLIC policy, states that the policy does not apply "to any claim brought by one insured under this policy against another insured under this policy."  *See* Am. Compl., Exs. M & N.  Each policy's Endorsement #6, which adds an additional layer of coverage to the main body of the policy, contains its own "insured v. insured" exclusion, Exclusion EPL-a), which is added to ("at the end thereof") the

EXCLUSIONS section of the main body of the policy.  *See* End. #6, ¶ 6.  Exclusion EPL-a)

provides that:

> the policy does not apply to any claim made by one Employed
> Lawyer against another, or made by or on behalf of the Named
> Insured or an Affiliate of the Named Insured or the Employed
> Lawyer, or partnerships or joint ventures in which the Employed
> Lawyer or the Named Insured or any Affiliate of the Employed
> Lawyer or the Named Insured is a partner or member, or by a
> predecessor firms, or corporations that were merged with or
> acquired by the Named Insured or any of its Affiliates or by any
> insurer as subrogee of any of them; however, this exclusion shall
> not apply to any claim brought derivatively by a security holder of
> the Named Insured or any of its Affiliates, in the name of and for
> the benefit of the Named Insured or any of its Affiliates, provided
> the claim is instigated and continued totally independent of, and
> totally without the solicitation of, or assistance of, or active
> participation of, or intervention of the Named Insured or any of its
> Affiliates, a director or officer of the Named Insured or any of its
> Affiliates, or the Employed Lawyer or any Affiliate of the
> Employed Lawyer[.]

*Id*. at pp. 2 and 3 of End. 6.

Finally, Exclusion (q) omits coverage for any claim arising out of or connected with the

performance or failure to perform services for any person or entity:

(1)     which is owned by or controlled by any Insured; or

(2)     which owns or controls any Insured; or,

(3)     which is affiliated with any Insured through
        any common ownership or control[.]

Exclusion (f), Exclusion EPL -a), and Exclusion (q) (to the extent Exclusion (q) is relied

upon to disclaim coverage for claims asserted or attempted to be asserted against Mr. Carabillo

by or regarding the employee benefit plans) are inconsistent with the coverage purchased by

ULLICO for the potential malpractice of its employed lawyers.  ULLICO was its employed

lawyers' only client; therefore, an exclusion barring claims brought by ULLICO against its counsel would take away the very coverage Endorsement 6 was purchased to provide.

An exclusion that is inconsistent with the purpose of the coverage to which it purportedly applies is ambiguous[7] and must be construed in favor of the insured. *See Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 158-59 (D.C. 2000) (finding an intentional torts exclusion inconsistent with a clause granting coverage for specifically-enumerated, clearly intentional torts); *see also Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1127 (D.C. 2001) ("[A]mbiguities in an insurance policy are construed against the insurer and in favor of "the reasonable expectations of the purchaser of the policy.") (internal citation omitted); *Meade v. Prudential Ins. Co.*, 477 A.2d 726, 728 (D.C. 1984).

One cannot give effect to the "insured v. insured" Exclusions (f), EPL-a) or Exclusion (q) without eviscerating the Employed Lawyers coverage ULLICO intended to acquire from AISLIC; therefore, these exclusions, upon which AISLIC relies to deny coverage, are unenforceable.

### 2. The purpose for which "insured v. insured" exclusions exist, to prevent collusive suits, does not present itself in this case.

The controversy between Mr. Carabillo and ULLICO arose when ULLICO's new Board of Directors and management wrongfully terminated him and acted to deprive him of his benefits. When Mr. Carabillo brought suit and ULLICO responded with a Counterclaim, Mr. Carabillo was then informed for the first time, by the lawsuit that he had been fired for alleged

---

[7] This District Court has recognized two categories of ambiguity, one in which contractual language is intrinsically unclear and the other arising out of the uncertain application of clear contractual language to a particular object or circumstance. *See Richardson v. Nationwide Mutual Ins. Co.*, 826 A.2d 310, 322 n.16 (D. D.C. 2003) (relying on *Am. States Ins. Co. v. Koloms*, 227 Ill. Dec. 149, 687 N.E.2d 72, 76 (citations omitted)). This case presents the latter type of ambiguity.

self-dealing, "in violation of [his] duties to [the company] and its shareholders." Prior to ULLICO's filing of the Counterclaim, Mr. Carabillo was unaware of the reasons for his termination.   As stated earlier, his termination letter merely states, "the report . . . of Gov. Thompson suggests you may have breached certain obligations to ULLICO, including your fiduciary duties of loyalty and care owed to ULLICO." Ex. 3. The letter then states, "ULLICO is unable to place ongoing confidence in your judgment. . . ." *Id.* Even after the Winston & Strawn report, ULLICO's new management could only muster a statement that Mr. Carabillo "may" have breached an unspecified duty in an unspecified manner. The complaining parties assert that Mr. Carabillo failed to adequately perform his duties as an officer of and lawyer to the corporation, with some breaches related to ERISA-based plans and some not.   Errors and omissions ("E&O") policies like the policy issued by AISLIC are just the types of policies that are issued to provide coverage for malpractice in a professional's or business person's vocational activity.

One cannot ascertain the meaning of the "insured v. insured" exclusion without examining the history that defines the reason for its existence (*see Richardson v. Nationwide Mutual Ins. Co.*, 826 A.2d 310, 323 (D. D.C. 2003), which is to avoid the submission of collusive claims between friendly or non-adverse parties for their mutual benefit.  This Court should consider what "insured v. insured" exclusions were created to accomplish, as it did in *Richardson* (*see* 826 Ad at 325 (citing *Kent Farms, Inc. v. Zurich Ins. Co.*, 140 Wash.2d 396, 998 P.2d 292, 294 (2000)), and it will come to no other conclusion than that they do not apply in this case.

"Insured v. insured" exclusions exist to prevent coverage for lawsuits brought by one insured under a policy against another insured under that same policy where such suit is brought

collusively in an attempt to recover a loss. *See Township of Center, Butler Co. Pennsylvania v. First Mercury Syndicate, Inc.*, 117 F.3d 115, 119 (1997). According to *First Mercury Syndicate* (and many other cases and industry articles), the exclusion arose from a wave of litigation in the mid-1980s when corporations attempted to use their Director and Officer policies to recoup operational losses. *Id.* Here, at the time the claims for which coverage is sought were made, ULLICO, the Insured, and Mr. Carabillo, the Insured, were no longer in a position to collude or to engage in "internecine warfare." *See id.* (quoting *American Cas. Co. v. FDIC*, 1990 U.S. Dist. LEXIS 6065, No. 86-4018, 7 1990 WL 66505, at * 41(N.D. Iowa Feb. 26, 1990)). As the court recognized in *First Mercury Syndicate*, "it is difficult to imagine a circumstance, short of a conspiracy to defraud, in which a wrongful discharge suit, brought by a former employee [followed by a Counterclaim by the former employer alleging nefarious acts of which the employee had been exonerated by the former employer,] could be perceived as constituting a collusive act." *Id.*

In this case, there is no need to prevent a collusive suit because none of the Counterclaim Plaintiffs except ULLICO is an insured under the AISLIC policies and because ULLICO is not the same company it was (due to a change in management, the board of directors and fiduciaries of benefit plans) when it ratified Mr. Carabillo's actions, and because Mr. Carabillo and ULLICO are clearly adverse. Here, Mr. Carabillo's lawsuit was filed months after alleged allegations. Mr. Carabillo received a specious letter terminating his position from essentially a new company on a Saturday, the day before his pension benefits were to begin. This clearly is not a case intended to be excluded by an "insured v. insured" exclusion.

Additionally, most "insured v. insured" exclusions are written to allow coverage for derivative actions. *See* Carolyn Rosenberg & Duane F. Sigelko, The Armor-Plated Board (citing

derivative actions as one of three fairly standard "carve-outs"), Ex. 8, also available at http://www.abanet.org/buslaw/blt/9-1dando.html. In fact, the more detailed "insured v. insured" exclusion set forth in the AISLIC policies, EPL-a), provides that it "shall not apply to any claim brought derivatively by a security holder of the Named Insured or any of its Affiliates, in the name of and for the benefit of the Named Insured or any of its Affiliates...." ULLICO's claims against Mr. Carabillo (through its new Board) are, effectively, derivative claims – claims against former officers of a corporation alleging breach of fiduciary duties. Any damages recoverable by ULLICO, et al. would be payable to the corporate entity or benefit plan and not to individual shareholders (as in a representative action) or to individuals outside the corporation, e.g., government officials, employees, creditors, competitors (as in third-party actions). Therefore, the derivative claim carve-out applies in this case.[8]

Many courts have found the "insured v. insured" exclusion inapplicable where an original "insured" has been replaced–for example, in situations involving receivers, trustees, or the FDIC. *See e.g., American Cas. Co. of Reading, Pennsylvania v. Sentry Sav. Bank*, 867 F. Supp. 50, 60 (D. Mass. 1994) (finding that the exclusion did not bar coverage where receivers sued former directors and officers of a failed institution); *Lewis v. Executive Risk Indemnity Inc.*, 2001 U.S. Dist. Lexis 25293, *8-9 (D. Mass. 2001) (finding that the exclusion did not bar coverage where bankruptcy trustee brought claims against former directors and officers on behalf of creditors); *Fidelity and Deposit Co. of Maryland v. Zandstra*, 756 F.Supp 429 (N.D. Cal. 1990) (finding that

---

[8] Though the derivative claim carve-out is further modified in EPL-a) to require that the claim be instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the Named Insured or any of its Affiliates, a director or officer of the Named Insured or any of its Affiliates, or the Employed Lawyer or any Affiliate of the Employed Lawyer[,] this limitation must be considered in light of the fact that the entire character of the Named Insured changed when a majority of the company's Board of Directors and its management changed. The purpose of the "insured v. insured" exclusion *and* the purpose of the modification to the carve-out in EPL-a) is to prevent collusion (e.g., colluding with a shareholder, convincing it to file a claim in the name of and for the benefit of the company, to recover from the insurance company some loss the

the exclusion did not bar coverage where FDIC took over claims against former directors and officers).  Most bankruptcy courts hold that the exclusion does not apply to a trustee who is not the same entity as the insured and sues on behalf of the estate and the estate's creditors.  *See, e.g., In re: County Seat Stores*, 280 B.R. 319 (S.D.N.Y. 2002); *In re: R.J. Reynolds-Patrick County Memorial Hospital, Inc.*, 315 B.R. 674 (W.D. Va. 2003); *In re: Buckeye Countrymark, Inc.*, 251 B.R. 835 (S.D. Ohio 2000).  Because the purposes of the exclusion will not be met, these courts hold, the exclusion does not apply.

Such is the case here.  The ULLICO Board and its appointed disinterested special committee that exonerated Mr. Carabillo of all wrongdoing is clearly not the same Board that subsequently acted adversely to Mr. Carabillo.  Instead, it was made up of different individuals.  That the new ULLICO Board and management team came to attack Mr. Carabillo after he accepted early retirement and left the company, is undeniable.  That ULLICO and Mr. Carabillo are truly adverse to one another in both the federal (ERISA-based) and state (common law-governed) actions also is undeniable.

3. **The Court is urged to find, based on basic principles of insurance contract construction, that the "insured v. insured" exclusions upon which AISLIC relies to deny coverage do not apply.**

The Court is urged to examine the language of the errors and omissions/professional liability policies AISLIC issued and construe them as a whole.  *See Richardson v. Nationwide Mutual Ins. Co.*, 826 A.2d 310, 325 (D. D.C. 2003) (citing *Kent Farms, Inc. v. Zurich Ins. Co.*, 140 Wash.2d 396, 998 P.2d 292, 294 (2000)).  Mr. Carabillo asks the Court to view the "insured v. insured" exclusion in light of the whole policy to determine whether, in that context and under

---

company has suffered).

these facts, it applies. *See id.*[9]   As the District Court did in *Richardson*, this Court should consider the history of the "insured v. insured" exclusion in addition to other contextual or explanatory materials. *See* 826 A.2d at 319-20 (considering a pollution exclusion in a general liability policy where carbon monoxide fumes caused injury).   It should find that their mere existence creates an ambiguity, because a strictly literal reading of them yields incongruous results and because the demonstrable intent of the industry in introducing the clause was to exclude coverage for entities that collusively sue their employees to recover insurance proceeds. This Court should reject a literal approach and recognize the insurer's attempt to apply the "insured v. insured" exclusion in this situation as "simply an opportunistic afterthought, at odds with [the exclusion's] original purpose . . . ." *See id.* at 320 (quoting *Kent Farms, Inc. v. Zurich Ins. Co.*, 998 P.2d 292, 295-96 (Wash. 2000)) (citation omitted).

**B.    The other provisions and exclusions upon which AISLIC relies to deny coverage do not work to avoid coverage in this case.**

**1.    AISLIC cannot legitimately rely on Exclusion EPL-c) to deny coverage.**

Exclusion EPL-c), found in Endorsement #6, provides that the policy does not apply:

> to any claim arising out of any activities by an Employed Lawyer as an officer or director of any corporation; provided, however, this exclusion shall not apply to rendering or failing to render professional services as a lawyer[.]

In other words, this purported exclusion is an exclusion which perfectly fits Mr. Carabillo in this situation.  While Mr. Carabillo continues to pursue the D&O carrier, he submits that by the

---

[9]"It is a fundamental rule that in the construction of contracts the courts may look not only to the language employed, but to the subject-matter and the surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made." *Richardson* at 321 (quoting *Merriam v. United States*, 107 U.S. 437, 441, 2 S.Ct. 536, 27 L.Ed. 531 (1882)).  Indeed, the meaning of a contract "must be ascertained in light of all of the circumstances surrounding the parties at the time the contract was made." *Id.* (quoting *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C.1984) (citing Restatement (Second) Of Contracts § § 202(1), 212(1)(1981))).

clear language quoted above AISLIC owes him a complete defense in the meantime, because the allegations made against him bring the complaints filed by ULLICO, *et al.*, are within the coverage of the Employed Lawyers Endorsement and his pursuit of D&O coverage is irrelevant.

In the District of Columbia, as in most jurisdictions, the duty to defend is broader than the duty to indemnify. *S. Freedman & Sons, Inc. v. Hartford Fire Ins. Co.*, 396 A.2d 195, 197 (D.C. 1978). "If it is **possible** that the allegations of a complaint would bring it within coverage of the policy, the insurer is obligated to defend, even if it ultimately is not required to pay a judgment." *American Continental Ins. Co. v. Pooya*, 666 A.2d 1193, 1198 (D.C. 1995)(emphasis added). Count II of the Superior Court action, the professional liability count, not only relates to but is inextricably tied to Mr. Carabillo's employment by the Named Insured as its lawyer; therefore, the AISLIC policy should provide Mr. Carabillo with a defense in that case, at the very least. Any other finding would make the coverage completely illusory. All other Counts asserted against Mr. Carabillo in both the state and federal cases relate to his status as a lawyer because Mr. Carabillo was ULLICO's lawyer at all times relevant. Therefore, AISLIC may not deny defense costs at this time.

**2.    AISLIC incorrectly submits that ULLICO, *et al.*, do not allege Wrongful Acts by Mr. Carabillo in his capacity as ULLICO's lawyer.**

Count II alleges that Mr. Carabillo breached the applicable standard of professional care with respect to his duties as in-house chief legal counsel regarding certain stock transactions and other transactions and activities. Specifically, ULLICO, *et al.*, charge that Mr. Carabillo, "[as] a lawyer licensed in the District of Columbia[,] . . . was under a duty to ULLICO to provide legal advice in accordance with the prevailing standards of professional care applicable to lawyers employed as in-house chief legal counsel." Sup. Ct. Compl. ¶ 97. They say he "engaged in a

course of conduct that caused ULLICO to engage in improper and unauthorized stock transactions and other transactions and activities, including, without limitation, those that violated ULLICO's Articles of Incorporation and bylaws." Sup. Ct. Compl. ¶ 98. "As a result . . . ," they conclude, "[Mr.] Carabillo breached the applicable standard of professional care and his duties and obligations owed to ULLICO, all to the detriment and damage of ULLICO." Countercl. ¶ 99. AISLIC's assertion that ULLICO, *et al.*, do not allege Wrongful Acts by Mr. Carabillo in his capacity as a lawyer is facially incorrect.

### 3.   AISLIC cannot avoid coverage simply by asserting that Mr. Carabillo acted outside the scope of his employment and does not qualify as an "Insured."

Here, AISLIC tries to argue an inappropriate pattern. Now it argues that Mr. Carabillo is not an "insured," even though it argued the opposite earlier by claiming that he was an "insured." *See* End. #6, insured v. insured. There is no question that Mr. Carabillo was a lawyer insured by AISLIC. Now AISLIC argues an unsupported claim that he acted beyond his duties, as yet undefined changes in status. This is fallacious under any test of logic or any grammatical parsing of the policy language and highlights clear ambiguity in this contract.

### 4.   AISLIC wrongly asserts that it did not receive proper notice of the claims asserted against Mr. Carabillo.

The main body of the AISLIC policy defines "Insured" as "any past, present, or future director, officer or employee of any entity named in item 1 of the Declarations, while acting within the scope of their duties as such." Endorsement #6 defines "Insured" as "any person admitted to practice law who is, was, or becomes employed as a lawyer full time and salaried by the Named Insured, (herein referred to as an 'Employed Lawyer')." As a former employee, officer, and Employed Lawyer of ULLICO, Mr. Carabillo qualifies as an "Insured" under either

definition. Mr. Carabillo asked ULLICO's broker to provide notice to all potential carriers that claims had been asserted against him by letter dated November 20, 2003; however, ULLICO's insurance carriers were previously put on notice of the claims ULLICO, *et al.*, recently placed before the courts when the allegations of self-dealing by Carabillo and others first surfaced in 2002. *See, e.g.*, October 30, 2002 Letter from ULLICO to its Employee Benefits Plan Fiduciary Liability and D&O carrier, *See* Am. Compl. Ex. D.

ULLICO was then "aware of [an] occurrence which [might] reasonably [have been] expected to give rise to a claim . . ."(*see* Policies' Special Reporting Clause, p. 5) and gave appropriate and sufficient written notice to AISLIC of the occurrence and possible Wrongful Act; therefore, AISLIC is obligated to treat any claim subsequently made against the Insured arising out of such potential Wrongful Act "as a claim made during the Policy Period ULLICO's carriers received written notice of a potential claim on October 30, 2002, the first day of the Policy Period for Professional Liability Policy No. 279-36-89. . ." Further, both National Union and AISLIC are AIG companies and AIG was aware of a potential claim as early as 2002 pursuant to a notice provided under National Union's Directors and Officers Policy. Accordingly, at all times the brokers for the relevant AISLIC polices and carriers were aware of the interactions between Mr. Carabillo and ULLICO and were aware of potential claims and the lawsuit subsequently filed.

Mr. Carabillo had no basis for knowing he had a specific claim under the AISLIC policies until the lawsuit was filed and notice was provided under said polices when claims were asserted against him in November 2003. For these reasons, proper notice was given, and Mr. Carabillo is entitled to coverage

**D.     AISLIC, through its agent, AIG, denied Mr. Carabillo's claim in bad faith.**

AISLIC's denial of coverage under Professional Liability Policy No. 348-92-35, through its agent, AIG, is in gross derogation of an insurer's obligation to make a good faith evaluation of its duty to defend based on the allegations in the Counterclaim and whether such allegations are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.  The company's complete and utter failure for four months to respond in any way to Mr. Carabillo's November 20, 2003 request for coverage under all potentially-applicable AISLIC policies is in gross derogation of an insurer's obligation to make a good faith evaluation of its duty to defend and indemnify based on the allegations set forth and whether such allegations are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.  Moreover, AISLIC's failure to provide copies of all potentially-applicable policies for the years 1996 to date, as Mr. Carabillo has requested, is in gross derogation of an insurer's obligations to its insured.

Not only did AIG's First Coverage Evaluation Letter on behalf of AISLIC totally misconstrue Mr. Carabillo's claim, *had* Mr. Carabillo been seeking coverage for his Complaint against ULLICO, it would have been fundamentally unreasonable and wrong of AIG to suggest that Mr. Carabillo assumed the liability of his *employer* in an employment contract or that an exclusion like Exclusion (l) (for liability assumed under contract) typically works to exclude employment contract disputes.  Worse, AISLIC's agent, AIG, failed in its Second Coverage Evaluation Letter to perceive or mention in any way, shape, or form the potential applicability of the policy's Employed Lawyers Endorsement, though it had been made aware that one of the six claims asserted against Mr. Carabillo was a legal professional liability claim.

As a direct result of AISLIC's bad faith failure to respond timely and appropriately to Mr. Carabillo's claims for insurance coverage, Mr. Carabillo has been wrongfully deprived of defense and indemnification, and as a result has suffered annoyance, aggravation, and inconvenience. The company's failure and refusal to honor its obligations to Mr. Carabillo constitutes extreme and outrageous behavior. With its facially-deficient coverage evaluation as to AISLIC Professional Liability Policy No. 348-92-35 and its categorical failure to respond to Mr. Carabillo's claim for coverage under AISLIC Professional Liability Policy No. 279-91-19 or any other AISLIC policy that might confer coverage under the circumstances, AISLIC has intentionally or recklessly caused Mr. Carabillo severe emotional distress.

## VII.  Conclusion

The material facts are not in dispute. Under these facts, Mr. Carabillo urges this Court to find, as a matter of law, that he is entitled to coverage under the Employed Lawyers Endorsement to the Insurance Company's Professional Liability Insurance policy issued by AISLIC to ULLICO for the benefit of Mr. Carabillo and other in-house legal counsel.

Respectfully submitted,

_____/s/_____
Daniel G. Grove, Esquire
(DC Bar #066399)
Jackson Kelly, PLLC
2401 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20037
Telephone:  (202) 973-0200

Jill M. Obenchain, Esquire
*Pro Hac Vice*
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Telephone:  (304) 340-1000

Counsel for Plaintiff Joseph A. Carabillo

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of December, 2005, a true copy of the foregoing Plaintiff Joseph A. Carabillo's Motion for Summary Judgment was served upon all counsel of record via Electronic Case Filing or as otherwise required by LCvR 5.4(d) of this Court's Local Rules.

_____/s/_____
Daniel G. Grove

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSEPH A. CARABILLO,      :
               :
    Plaintiff,      :
               :
v.              :   **Case No.: 1:04CV00970**
               :   **Judge:  Richard J. Leon**
AMERICAN INTERNATIONAL  :   **Next Event:**
SPECIALTY LINES INSURANCE  :
COMPANY,        :
               :
and           :
               :
NATIONAL UNION FIRE INSURANCE :
COMPANY OF PITTSBURGH, PA.  :
               :
    Defendants.    :

## ORDER

   Pending before the Court is the Motion for Summary Judgment submitted by the Plaintiff, Joseph A. Carabillo ("Mr. Carabillo").  Mr. Carabillo contends that American International Specialty Lines Insurance Company ("AISLIC"), a professional liability carrier, has a duty to defend and indemnify him in civil cases alleging professional malpractice.

   The Court has read the record and considered Plaintiff, Joseph A. Carabillo's Motion for Summary Judgment and Memorandum in Support and makes the following findings:

   1.   AISLIC owes Mr. Carabillo a defense and indemnity under Professional Liability Insurance policies it issued to Mr. Carabillo's former employer, ULLICO, Inc. for all claims asserted against Mr. Carabillo by ULLIC, Inc., and others.

   2.   As set forth in the Memorandum in Support of Mr. Carabillo's Motion for Summary Judgment, the record demonstrates that there exists no genuine issue of material fact and Mr. Carabillo is entitled to summary judgment as a matter of law. *See* Fed. R.Civ. P. 56(c);

{S0308813.1}

*New York State Bar Association v. Federal Trade Commission*, 2004 U.S. Dist. LEXIS 7698 (D.D.C. 2004).

    3.    As a former Employed Lawyer of ULLICO, Inc., and as a party against whom legal professional liability claims have been asserted by ULLICO, Inc., Mr. Carabillo's only client, Mr. Carabillo is entitled to insurance coverage as a matter of law under Professional Liability Insurance policies issued by AISLIC, and the terms, conditions, and exclusions upon which AISLIC relies to deny coverage do not work to preclude coverage.

Accordingly, it is this _____ day of _____, 200_ .hereby

ORDERED that Joseph A. Carabillo's Motion for Summary Judgment against American International Specialty Lines Insurance Company; is hereby GRANTED; and it is further

ORDERED that American International Specialty Lines Insurance Company will defend and indemnify Joseph A. Carabillo for all claims in the civil cases now pending before this Court and/or the Superior Court of the District of Columbia; and it is further

ORDERED that this Court shall retain jurisdiction over this action to determine the award of costs and attorneys' fees in this matter.

_____
Honorable Richard J. Leon